**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 25 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

WADRESS HUBERT METOYER,
JR.,

        Petitioner - Appellant,

v.

H.N. "SONNY" SCOTT,

        Respondent - Appellee.

No. 02-5155
(D.C. No. 00-CV-69-K)
(N.D. Oklahoma)

ORDER AND JUDGMENT *

Before **KELLY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Wadress Hubert Metoyer, Jr., was convicted of first-degree murder in an Oklahoma district court and sentenced to life imprisonment and a fine. He now appeals the denial of federal habeas corpus relief, asserting ineffective assistance of counsel and denial of speedy trial and due process rights. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(c), we affirm.

According to the testimony presented at trial, on the evening of July 23, 1982, Mr. Metoyer, Larry Gamble, Mr. Gamble's girlfriend Wanda Chaney and Dr. Ron Wall were at Mr. Gamble's apartment. Dr. Wall frequented the Gamble apartment in order to purchase drugs. That evening, Mr. Gamble became upset when he discovered some of his cocaine was missing. Initially, he accused Ms. Chaney of taking the drugs and began beating her. Later, he suspected Dr. Wall. Dr. Wall, Mr. Gamble and Mr. Metoyer engaged in a heated discussion about the drugs. While Mr. Gamble was in the bathroom, Mr. Metoyer shot Dr. Wall because Dr. Wall "wouldn't come clean." R., Doc. 9, pt. I, Trial Tr. at 44; *id.* pt. II at 339. Mr. Gamble and Mr. Metoyer rolled Dr. Wall's body in a carpet and put the body in the trunk of Dr. Wall's car. Mr. Metoyer, in Dr. Wall's car, and Mr. Gamble and Ms. Chaney, in Mr. Gamble's car, drove to a water-filled strip pit about an hour away. There, the two men pushed Dr. Wall's car into the strip pit and watched it submerge.

After the murder, Mr. Gamble threatened to kill Ms. Chaney if she told anyone what had happened. Later, she broke up with him and moved to Georgia, but continued to have some communication with him.

Dr. Wall's disappearance was treated as a missing person case until 1986, when the police received a tip from an informant that Dr. Wall had been killed. In 1988, the police located Ms. Chaney in Georgia and interviewed her there. Based on the information received from her, the police searched several strip pits, but found nothing. In 1990, they again unsuccessfully explored several strip pits. Also, that year, Mr. Metoyer and Mr. Gamble were charged with murder and accessory to murder, respectively, of Dr. Wall. The charges were dismissed after Ms. Chaney could not be found and the statute of limitations had run on the accessory charge against Mr. Gamble.

In 1995, Mr. Gamble, who then was in custody on a federal charge of possession of cocaine with intent to distribute, agreed to cooperate and led police to the strip pit. After the car was removed from the strip pit and the trunk was opened, the police found human bones rolled in a carpet. A sock was recovered from around the mouth area of the skull; underwear was around the torso bones; the hands were tied behind the back; and a bullet was found in the skull. Also in the trunk were a pair of tennis shoes and a jogging suit.

Mr. Metoyer again was charged with Dr. Wall's death. Fifteen months later, a jury found him guilty of first degree murder. In unpublished decisions, the Oklahoma Court of Criminal Appeals (OCCA) affirmed the conviction, and, later, the state district court's denial of post-conviction relief. Mr. Metoyer then unsuccessfully sought federal habeas corpus relief. Although the federal district court denied a certificate of appealability (COA), this court granted COA on his ineffective assistance of counsel, speedy trial and due process issues.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to this appeal, *see Williams v. Taylor*, 529 U.S. 362, 402 (2000), our standard of review depends upon whether the state courts addressed the merits of a particular claim for relief. If so, Mr. Metoyer is entitled to habeas relief if the decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Federal courts presume the state court's factual findings are correct, unless rebutted by clear and convincing evidence. *Id.* § 2254(e)(1). If the state courts did not decide a claim on its merits, and the claim is not procedurally barred, this court reviews the district court's legal conclusions *de novo* and its factual findings, if any, for clear

error. *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001), *cert. denied*, 123 S. Ct. 165 (2002).

## I.

Mr. Metoyer first argues that he was denied constitutionally effective assistance of trial and appellate counsel. He contends trial counsel failed to use available evidence, failed to adequately investigate his claim of innocence, failed to engage in meaningful cross-examination and failed to move to disqualify the District Attorney's Office on the grounds of bias and partiality. He contends appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims. Also, Mr. Metoyer asserts the federal district court erred in denying him an evidentiary hearing.

Mr. Metoyer raised ineffective assistance of trial counsel claims for the first time in his application for post-conviction relief. The OCCA deemed the claims waived because they could have been brought on direct appeal. *Metoyer v. State*, No. PC 99-1458, Order at 2-3 (Okla. Crim. App. Jan. 7, 2000) (unpublished). This procedural bar will be adequate if (1) trial and appellate counsel differ and (2) the claim can be resolved solely on consideration of the trial record. *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998). *But see generally Massaro v. United States*, 123 S. Ct. 1690, 1694-96 (2003) (holding ineffective-trial-assistance claim may be brought in 28 U.S.C. § 2255 proceeding

regardless of whether claim could have been raised on direct appeal).  Here, although trial and appellate counsel were both employed by the Tulsa County Public Defender's Office, the federal district court decided Mr. Metoyer's ineffective assistance of trial counsel claims were procedurally barred because he had the opportunity to consult with separate counsel on appeal and the claims could be decided on the record. [1]  Instead of deciding whether Mr. Metoyer actually had different trial and appellate counsel and whether his claims could be resolved on the trial record, we address the merits of the claims because it is easier and more succinct to do so.  *See Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000).  In doing so, we review *de novo*.  *See McCracken*, 268 F.3d at 975.

Ineffective assistance of counsel claims are governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003).  A petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the petitioner's defense.  *Id.* (citing *Strickland*, 466 U.S. at 687).  A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  To

---

[1]     The federal district court also decided that, even if the claims were not procedurally barred, they would be rejected on their merits.

establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Mr. Metoyer contends that although he told his trial counsel that he was innocent and that he was not present at the time of Dr. Wall's murder, counsel failed to investigate and present evidence of his innocence. Mr. Metoyer asserts counsel's incorrect trial strategy suggested he was involved in the murder along with Mr. Gamble and Ms. Chaney. [2] Rather, he contends counsel should have requested an expert to examine the bullet taken from Dr. Wall's body, rather than accept the State's theory that the bullet came from a hand gun in Mr. Metoyer's possession, since both Mr. Gamble and Ms. Chaney carried guns. He also argues counsel should have investigated and presented evidence that the murder took place in Dr. Wall's, not Mr. Gamble's, apartment, and that Mr. Gamble and Dr. Wall were involved in prescription drug fraud. Mr. Metoyer further asserts counsel should have called witnesses who could have testified that Mr. Gamble had told them that he killed Dr. Wall. Finally, counsel should have interviewed

---

[2]     Counsel argued that due to his size, Mr. Metoyer, while holding a gun, would not have had the ability to subdue, gag and tie Dr. Wall alone. Further she contended Mr. Gamble was involved in the murder because Dr. Wall was shot at Mr. Gamble's apartment in an argument over Mr. Gamble's drugs and with the gun Mr. Gamble gave Mr. Metoyer. In addition, Mr. Gamble decided how to dispose of the body, where to obtain the carpet and how to get to the strip pit.

Richard Jefferson, who allegedly overheard Mr. Gamble tell Ms. Chaney that he would kill her like he had killed another.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation and citation omitted); *see also Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002), *cert. denied*, 123 S. Ct. 703 (2002). It is settled that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

Mr. Metoyer has failed to meet his burden of proving counsel's investigations were unreasonable and her strategy was unreasonable. Nothing in this record, even as supplemented in the federal district court, proves Mr. Metoyer's actual innocence. Rather, based on the record before us, we are left with no conclusion other than that counsel rejected a strategy asserting Mr. Metoyer's innocence and reasonably pursued and asserted a strategy that Mr. Metoyer had not acted alone.

Counsel was aware of the informant's statement that Mr. Gamble had confessed to the informant that Mr. Gamble had killed Dr. Wall. *See* R., Doc. 9, pt. I, Tr. of Oct. 7 & 8, 1996 Hr'g at 22 (counsel called witness who testified that another officer told him that informant said Mr. Gamble shot and killed Dr. Wall during drug deal). Generally, trial counsel has discretion to decide whether to call particular witnesses. *See Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998). Under the circumstances of this case, we cannot conclude that counsel abused her discretion in failing to call certain witnesses.

Mr. Metoyer asserts counsel should have presented evidence that Ms. Chaney lied when she testified she had witnessed Mr. Metoyer kill Dr. Wall. Ms. Chaney did give differing stories to police and some differing testimony under oath. Mr. Metoyer's trial counsel, however, rigorously and extensively both questioned her about these discrepancies during cross-examination and challenged her credibility.

Mr. Metoyer argues his trial counsel should have moved to disqualify the district attorney's office on bias and partiality grounds because that office failed to identify, investigate, evaluate, develop or present evidence favorable to his innocence. Because Mr. Metoyer's argument is conclusory and unsupported, we cannot conclude counsel was ineffective for failing to assert bias.

-9-

This is not a case where counsel totally failed to investigate. Rather, trial counsel was prepared at trial; she called several witnesses and thoroughly examined Ms. Chaney and Mr. Gamble. Considering her performance throughout the trial, we conclude it did not "f[a]ll below an objective standard of reasonableness," measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688, 690. Having determined that counsel's performance was not deficient, we need not address whether Mr. Metoyer was prejudiced by counsel's performance. *See id.* at 697 (permitting court to dispose of claim on whichever prong is easier to resolve).

Mr. Metoyer next argues his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel claims on direct appeal. Ineffective assistance of appellate counsel claims are also governed by *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). On post-conviction review, the OCCA rejected the ineffective assistance of appellate counsel argument, applying *Strickland*, but as further restricted by *Lockhart v. Fretwell*, 506 U.S. 364 (1993). *Metoyer*, No. PC 99-1458, Order at 3-4. The OCCA's application of this more onerous standard was contrary to the Supreme Court's clearly established precedent in *Strickland*. *See Williams*, 529 U.S. at 391-95. Because the OCCA applied inapplicable law, we review Mr. Metoyer's claims of ineffective assistance of appellate counsel *de novo*. *See McCracken*, 268 F.3d at 975.

-10-

Because he cannot show ineffective assistance of trial counsel, it therefore follows that he cannot show ineffective assistance of appellate counsel.

Finally, we agree with the federal district court that Mr. Metoyer is not entitled to an evidentiary hearing. We can resolve the ineffective-assistance claims on their merits, based solely on the record before us. *See, e.g.*, *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).

II.

Mr. Metoyer argues he was denied his right to a speedy trial and to due process due to the over fourteen-year delay between the July 23, 1982 murder and the trial commencing on October 10, 1996. An indictment charging murder was first filed against Mr. Metoyer on April 25, 1990. He moved to dismiss the indictment on speedy trial grounds. On December 3, 1990, the trial court granted the State's motion to dismiss the indictment. On July 21, 1995, a second indictment was filed against Mr. Metoyer, after Mr. Gamble decided to cooperate with the investigation. Mr. Metoyer again moved to dismiss, asserting due process and speedy trial violations. The trial court denied the motion after holding an evidentiary hearing. *See* R., Doc. 9, pt. I, Tr. of Oct. 7-8, 1996 Hr'g at 96-97. In its direct appeal decision and order denying rehearing, the OCCA rejected the speedy trial and due process claims on their merits. *Metoyer v. State*, No. F-96-1573, Summary Opinion at 2 (Okla. Crim. App. July 8, 1998)

-11-

(unpublished); *Metoyer v. State*, No. F-96-1573, Order Denying Rehearing at 1-2 (Okla. Crim. App. Aug. 25, 1998).

We agree with Mr. Metoyer's assertion that his speedy-trial right attached on April 25, 1990, when he was first charged with murder. *See United States v. Marion*, 404 U.S. 307, 313 (1971). That right, however, did not continue to apply after the 1990 charge was dropped. *See United States v. MacDonald*, 456 U.S. 1, 7 (1982). Thus, as the OCCA decided, the relevant period for a possible speedy-trial violation was the fifteen-month delay between the second indictment filed on July 21, 1995 and the trial held in October of 1996. *See Metoyer*, No. F-96-1573, Summary Opinion at 2.

Four relevant factors to consider in assessing a speedy-trial violation include the length of the delay, the reason for the delay, the petitioner's assertion of his speedy-trial rights and the prejudice to the petitioner. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). For purposes of this case, we assume presumptive prejudice for the fifteen-month delay. *See Castro v. Ward*, 138 F.3d 810, 819, 820 (10th Cir. 1998) (citing, among other cases, *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *see also Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); *Perez v. Sullivan*, 793 F.2d 249, 255 (10th Cir. 1986) (determining delay of fifteen months from defendant's guilty

plea until sentencing was sufficiently long to provoke inquiry into remaining three *Barker* factors).

The remaining *Barker* factors suggest Mr. Metoyer's speedy trial rights were not violated. Nothing indicates the State deliberately attempted to delay the trial, hamper the defense or gain a tactical advantage. *See Perez*, 793 F.2d at 255 (citing *Barker*, 407 U.S. at 531 n.32). Rather, the State requested only one continuance, in order for the autopsy report to be completed. Although Mr. Metoyer asserted his speedy-trial right, he has failed to prove prejudice due to the delay. *See Barker*, 407 U.S. at 532 (assessing prejudice in light of three interests speedy-trial right was designed to protect: (1) "to prevent oppressive pretrial incarceration;" (2) "to minimize anxiety and concern of the accused;" and (3) "to limit the possibility that the defense will be impaired"). "[His s]peculative allegations of injury are unpersuasive." *Perez*, 793 F.2d at 257. Balancing these four factors, it is clear Mr. Metoyer's right to a speedy trial was not violated. *See Barker*, 407 U.S. at 533. The OCCA's determination that there was no speedy-trial violation is not unreasonable. *See* 28 U.S.C. § 2254(d); *Metoyer*, No. F-96-1573, Summary Opinion at 2.

The next question is whether the fourteen-year delay between the 1982 murder and the 1996 trial violated Mr. Metoyer's due process rights. *See Doggett*, 505 U.S. at 655 n.2 (observing defendant "may invoke due process to

-13-

challenge delay both before and after official accusation"). To prove a due process violation, Mr. Metoyer must show that pre-indictment delay prejudiced his right to a fair trial and that the State intentionally used delay to gain a tactical advantage over him. *See Marion*, 404 U.S. at 324-325; *see also United States v. Lovasco*, 431 U.S. 783, 790 (1977).

Mr. Metoyer contends the delay, along with the fact that he was in custody or on parole between 1983 and 1995, hampered his ability to find witnesses and evidence and to reconstruct the events on the day of the murder. Faded memories, inaccessible witnesses and lost evidence alone, however, are insufficient to prove he did not receive a fair trial. *See Marion*, 404 U.S. at 326. Mr. Metoyer also asserts prejudice because both of his alibi witnesses, who allegedly could prove his innocence, had died before his 1996 trial. His counsel, however, did not call one of those persons, Mr. Metoyer's mother, as a witness at the 1990 preliminary hearing, even though she was still living. And he does not establish that either possible witness would have testified at trial or that their testimony would have been helpful. *See United States v. Pino*, 708 F.2d 523, 528 (10th Cir. 1983).

Mr. Metoyer also argues he suffered prejudice because he could have served his sentences concurrently. He, however, does not have such a right. *See United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994) (deciding defendant failed to show actual and substantial prejudice because court was unaware of case

law and defendant did not provide any suggesting he had right to serve state and federal sentences concurrently). Thus, Mr. Metoyer failed to show prejudice due to the delay.

Even if we were to assume Mr. Metoyer could prove prejudice, however, the record does not establish that the State used delay to obtain a tactical advantage over him. Rather, the record shows the State offered a credible explanation for the delay. The police did not even consider Dr. Wall's disappearance a murder until 1986. In 1986 and 1989, Mr. Gamble refused to cooperate, even though he admitted to the authorities that he knew where Dr. Wall's body was located and helped dispose of the body. *See* R., Doc. 9, pt. I, Tr. of Oct. 7-8, 1996 Hr'g at 12, 41. The State had dismissed the 1990 charge because Dr. Wall's body had not been found and because Ms. Chaney could not be located. Although the police attempted to find Dr. Wall's body in 1986, 1988 and 1990, they were unable to do so until 1995, when Mr. Gamble, who was facing federal drug charges, decided to cooperate with authorities. Thus, the delay was caused by the State's legitimate desire to present a stronger case. *See Pino*, 708 F.2d at 528-29 (recognizing that uncertainty as to strength of prosecutor's case is legitimate reason for delay in obtaining indictment); *see also Lovasco*, 431 U.S. at 795 (deciding prosecutor abides by fairness standards by refusing to seek indictment until he is satisfied he should prosecute and will be

-15-

able to establish guilt); *United States v. Lebron-Gonzalez*, 816 F.2d 823, 831 (1st Cir. 1987) (holding in case where key witness cooperated only after his arrest, that "even though the prosecution has probable cause, it is under no duty to initiate criminal proceedings until it is satisfied that it can establish guilt beyond a reasonable doubt"). We also reject Mr. Metoyer's assertion that the State gained a tactical advantage because no law enforcement officer ever interviewed him, and instead only talked to Mr. Gamble and Ms. Chaney.

Because Mr. Metoyer's argument is deficient in both aspects necessary to establish a due process violation, we conclude the OCCA's decision that there was no due process violation was not unreasonable. *See* 28 U.S.C. § 2254(d); *Metoyer*, No. F-96-1573, Order Denying Rehearing at 1-2. [3]

The judgment of the district court is AFFIRMED. The mandate shall issue forthwith.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

---

[3] We do not consider Mr. Metoyer's conclusory argument raised for the first time in his reply brief in this court that he was denied his right to be co-counsel at his trial and that the prosecution unfairly prejudiced his trial by bolstering Ms. Chaney's credibility. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).