**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 10-6072

MICHAEL SHANE MADDEN,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:09-CR-00074-HE-1)**

Francis R. Courbois, Oklahoma City, Oklahoma, for Defendant - Appellant.

Edward J. Kumiega, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Jonathon E. Boatman, Assistant United States Attorney, with him on the briefs), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

**MURPHY**, Circuit Judge.

I.     **Introduction**

Michael Madden pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), reserving the right to appeal

the district court's denial of his motions to suppress and to quash the indictment for excessive delay. He argues the district court erred in denying his motion to suppress because his detention and the subsequent search of his vehicle violated the Fourth Amendment. He argues the district court abused its discretion by denying his motion to quash the indictment because a preindictment delay of four years violated his Fifth Amendment right to due process and his Sixth Amendment right to a speedy trial.

The district court properly denied both motions. Neither Madden's detention, nor the search of his vehicle, violated the Fourth Amendment. Madden's investigatory detention was justified by articulable and reasonable suspicion and his subsequent arrest was supported by probable cause. Moreover, the search of Madden's vehicle falls within the good-faith exception to the exclusionary rule. In addition, the preindictment delay did not violate the Fifth or Sixth Amendments. Madden failed to show the requisite prejudice to establish a violation of his Fifth Amendment right to due process. Furthermore, because the delay occurred prior to Madden's indictment, his Sixth Amendment right to a speedy trial was not violated. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's rulings.

## II.    Background

On March 3, 2005, Sergeant Juan Balderrama, an Oklahoma City police officer, noticed Madden's vehicle parked in the loading dock area of Grider's

grocery store.[1] The engine was off and Madden was sitting in the driver's seat, drawing on a sketch pad. Officer Balderrama approached the vehicle because cars did not usually park in that location. He also thought the vehicle was illegally parked on a pedestrian walkway and in a no-parking zone. He asked Madden what he was doing and requested Madden's driver's license. Madden explained that his car had run out of fuel and he was waiting for a friend to bring him gasoline. Madden did not have his driver's license with him. Because it is a violation of both state law and city ordinance for an individual to drive without a license in his immediate possession, Officer Balderrama asked Madden to step out of his vehicle so Balderrama could investigate further. Officer Balderrama then asked or directed Madden to sit in the back of his patrol car for "investigative detention" while Balderrama obtained Madden's personal information and ran it through his computer.

Once Madden was in Officer Balderrama's patrol car, Balderrama asked Madden if he had any drugs or weapons in his vehicle and if Balderrama could search the vehicle. Madden denied having drugs or weapons in his vehicle and refused to allow the officer to search it. Officer Balderrama asked Madden if he had ever been convicted of a felony; Madden admitted he had an armed robbery conviction and had recently been released from the state penitentiary. Officer

---

[1]These facts were established by the district court at an evidentiary hearing on June 23, 2009, and were set forth in the district court's order, issued July 7, 2009, denying Madden's motions to suppress and to quash the indictment.

Balderrama ran a driver's license check and learned Madden had a valid Oklahoma driver's license, but also learned Madden had two outstanding municipal misdemeanor traffic warrants from 1995. Upon learning of these outstanding warrants, Officer Balderrama arrested Madden and handcuffed him.

At some point another officer arrived and he and Officer Balderrama inventoried and impounded Madden's vehicle. The search yielded a firearm and two magazine clips. After the search, Officer Balderrama transported Madden to the Oklahoma County jail.

Madden was charged in state court with being a felon in possession of a firearm in violation of Okla. Stat. Ann. tit. 21, § 1283. On September 20, 2005, at the conclusion of the preliminary hearing on the charge, the state trial court concluded that, while Madden's arrest was proper, the search of his vehicle was invalid because the vehicle was improperly impounded and inventoried. Thus, the court sustained Madden's demurrer, suppressed the evidence found during the search, and the state felon-in-possession charge was dismissed.

On February 1, 2006, Madden pleaded guilty to two unrelated state felony drug charges. He was released from state custody on December 18, 2008. Based on the March 3, 2005 incident in Grider's parking lot, Madden was indicted on March 3, 2009 by a federal grand jury on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Madden filed motions, inter alia, to quash the indictment for a speedy-trial based claim of excessive delay and suppress the firearm and ammunition as fruit of an illegal seizure and search. Following an evidentiary hearing, the district court issued an order denying Madden's motions. Madden subsequently pleaded guilty pursuant to a conditional plea agreement, reserving his right to appeal the district court's rulings on his motions to suppress and to quash.

On appeal, Madden asserts the district court erred in denying his motion to suppress, arguing his detention was unjustified at its inception. He also argues the subsequent search of his vehicle was not warranted as an inventory search and the good-faith exception to the exclusionary rule does not apply. He asserts the district court abused its discretion by denying his motion to quash because the government deliberately deprived him of his right to substantive due process and a speedy trial by waiting until his release from state prison—four years after the date of the firearm offense—to seek an indictment in this case.

## III.   Analysis

### A.   Motion to Suppress

In reviewing a district court's denial of a motion to suppress, this court considers the totality of the circumstances and views the evidence in the light most favorable to the government. *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). The district court's factual findings are reviewed for clear

error. *Id.* The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo. *Id.*

Madden argues the district court erred in denying his motion to suppress because his detention was not justified at its inception. Specifically, he argues he was seized the moment Officer Balderrama approached his car and Balderrama lacked reasonable suspicion of criminal activity to justify the seizure. The district court concluded the encounter between Officer Balderrama and Madden began as a consensual one; by the time it evolved into an investigatory detention Balderrama had reasonable suspicion justifying the detention; and Madden's eventual arrest was supported by probable cause. We agree.

> This court has previously identified three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

*United States v. Ringold*, 335 F.3d 1168, 1171 (10th Cir. 2003) (quotation omitted). As part of a consensual encounter, an officer may approach an individual, ask a few questions, ask to examine the individual's identification, and even ask for consent to search "as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 434, 435 (1991). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable

suspicion is required." *Id.* at 434 (alteration omitted). "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439. Officer Balderrama approached Madden's parked vehicle, asked Madden what he was doing, and requested Madden's driver's license. There is no evidence suggesting Officer Balderrama conveyed a message that compliance with his requests was required. *See Ringold*, 335 F.3d at 1172. A reasonable person in Madden's position would feel free to decline Officer Balderrama's requests or otherwise terminate the encounter. *See United States v. Angulo-Fernandez*, 53 F.3d 1177, 1179 (10th Cir. 1995); *see also INS v. Delgado*, 466 U.S. 210, 217-18 (1984). Thus, the initial encounter between Madden and Officer Balderrama was consensual and does not implicate the Fourth Amendment.

"Of course, the nature of the police-citizen encounter can change—what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa." *United States v. Zapata*, 997 F.2d 751, 756 n.3 (10th Cir. 1993). In this case, what began as a consensual encounter became an investigative detention when Officer Balderrama asked Madden to step out of his vehicle and then asked or directed Madden to sit in the back of his patrol car while he obtained Madden's personal information and ran it through his

computer. The district court properly concluded, however, that Madden's detention was reasonable under the Fourth Amendment. To initiate a seizure by means of an investigative detention, an officer must have an articulable and reasonable suspicion that the person seized is engaged in criminal activity. *United States v. Lambert*, 46 F.3d 1064, 1069 (10th Cir. 1995). "In determining whether reasonable suspicion exists, the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Id.* Officer Balderrama found Madden sitting in the driver's seat of his parked vehicle. Madden told Officer Balderrama his car ran out of fuel and he was waiting for a friend to bring gasoline. He also told Officer Balderrama he did not have his driver's license with him. It is a violation of state law (Okla. Stat. tit. 47, § 6-112) and city ordinance (Oklahoma City, Okla., Mun. Code ch. 32, art. I, § 32-12) for an individual to drive without a valid driver's license in his immediate possession. Therefore, based on the totality of the circumstances, Officer Balderrama had a particularized and objective basis for suspecting Madden of driving without a license in his immediate possession in violation of both state law and city ordinance. In other words, Officer Balderrama had an articulable and reasonable

suspicion Madden was engaged in criminal activity, justifying Madden's investigatory detention.[2]

Finally, while Madden does not appear to challenge the validity of his arrest, it too was justified. An arrest is justified if probable cause exists to believe a person is committing or has committed a crime. *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir. 1986). Madden was arrested after Officer Balderrama learned he had two outstanding municipal misdemeanor traffic warrants. Thus, Madden's arrest was justified because probable cause existed to believe Madden had committed a crime. In sum, Madden's detention was justified at its inception and remained justified through his arrest, and therefore, did not violate the Fourth Amendment.

Madden also argues the district court erred in denying his motion to suppress because, even if his detention was justified, the subsequent search of his vehicle was not. This argument also fails. The district court properly concluded the search of Madden's vehicle was not a valid search incident to arrest in light of *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Madden was seated in the back of Officer Balderrama's patrol car at the time of the search and it was not reasonable to believe his vehicle contained evidence of the offense of arrest, i.e., evidence of two outstanding municipal misdemeanor traffic warrants. *See Gant*, 556 U.S. at

---

[2]Madden does not argue his detention was unreasonable in either scope or duration. Thus, we do not reach that issue.

343-44, 351; *United States v. McCane*, 573 F.3d 1037, 1040 (10th Cir. 2009). The district court also properly concluded, however, that Officer Balderrama's "search of the vehicle incident to [Madden's] arrest was objectively reasonable, that the good faith exception is applicable, and that the fruits of the search are not subject to suppression notwithstanding the illegality of the search." The good-faith exception to the exclusionary rule applies when a search is objectively reasonable under the binding, settled case law of a United States Court of Appeals, even if the search is later rendered unconstitutional by a Supreme Court decision. *McCane*, 573 F.3d at 1044; *see also Davis v. United States*, 131 S. Ct. 2419, 2434 (2011) ("[W]hen the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply."). In *McCane*, this court concluded our pre-*Gant* precedent justified the search of the passenger compartment of an arrestee's vehicle incident to arrest even though he was handcuffed and seated in the back of a patrol car at the time of the search and it was not reasonable to believe his vehicle contained evidence of the offense of arrest. 573 F.3d at 1038-39, 1041-42. We therefore held the good-faith exception to the exclusionary rule applied and upheld the district court's denial of a motion to suppress evidence found during the search. *Id.* at 1045; *see also Davis*, 131 S. Ct. at 2425-26, 2434. *McCane* is directly on point. The good-faith exception applies here because the search of Madden's vehicle was objectively reasonable as a search incident to arrest under then-existing, well-settled law of

-10-

this court. Thus, the search did not violate the Fourth Amendment and the district court properly denied Madden's motion to suppress.

Madden argues the good-faith exception does not apply in this case for several reasons. He first asserts the search of his vehicle was not objectively reasonable because the state of Oklahoma does not recognize the good-faith exception and Officer Balderrama should have known that. Whether Oklahoma recognizes the good-faith exception, however, has no bearing on the outcome of this case. This court is not bound by a state court's interpretation of the Fourth Amendment. *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007). "[I]n federal prosecutions the test of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal Law even though the police actions are those of state police officers." *United States v. Green*, 178 F.3d 1099, 1105 (10th Cir. 1999) (quotations omitted). Whether an "arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended." *Id.* (quotation omitted).

Madden also asserts Officer Balderrama conducted an inventory search, not a search incident to arrest. He argues the well-settled law of this court at the time of the search prohibited the impoundment and inventory search of his vehicle. Thus, he argues the search was an invalid inventory search and cannot be saved by the good-faith exception. Whether the impoundment and inventory search of

Madden's vehicle were proper, however, is irrelevant because the search of Madden's vehicle was an objectively reasonable search incident to arrest.[3]

Madden further argues that Officer Balderrama justified the search as an inventory search rather than a search incident to arrest, and therefore, the search is not an objectively reasonable search incident to arrest. That argument fails as both a matter of fact and law. Officer Balderrama did not justify the search *solely* as an inventory search. The probable cause affidavit filled-out and signed by Officer Balderrama on the day of the search states that Madden's "vehicle was searched incident to arrest." Officer Balderrama also testified at the suppression hearing that he justified the search as a search incident to arrest. In any event, Officer Balderrama's stated justification for the search is irrelevant because the good-faith inquiry is an objective one. The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal . . . [considering] all of the circumstances." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). If "the circumstances, viewed objectively, justify the challenged action . . . that action was reasonable *whatever* the subjective intent motivating the relevant officials." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quotations and citation

---

[3]We need not and do not decide whether the impoundment and inventory search of Madden's vehicle were appropriate. Thus, we also need not address Madden's argument that we must accord deference to the state court's conclusion the search of his vehicle was invalid because the vehicle was improperly impounded and inventoried.

omitted); *see also Leon*, 468 U.S. at 922 n.23 (stating the good faith inquiry does not include consideration of the motive with which an officer conducts a search); *Scott v. United States*, 436 U.S. 128, 138 (1978) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."). Because the search was an objectively reasonable search incident to arrest under then-existing, well-established law of this court, the good faith exception applies regardless of how Officer Balderrama justified the search.

Finally, Madden argues the good-faith exception should not be applied because, he claims, Officer Balderrama lied at the suppression hearing, and therefore, acted in bad faith. He asserts the Supreme Court's decision in *Davis v. United States*, 131 S. Ct. 2419 (2011), supports this argument. In *Davis*, the Court stated that because the exclusionary rule "exacts a heavy toll on both the judicial system and society at large . . . [f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." 131 S. Ct. at 2427. Madden argues that by lying at the suppression hearing, Officer Balderrama acted in bad faith, warranting "a heavy dose of deterrence." Moreover, he argues invalidating the search will not exact a heavy toll on the judicial system or society at large because Madden was merely sentenced to probation. Thus, he argues "deterrence clearly outweighs social cost here." This

-13-

argument is also without merit. Madden's claims that Officer Balderrama lied at the suppression hearing are based on two aspects of Officer Balderrama's testimony: that (1) he had the consent of Grider's to impound Madden's vehicle; and (2) he saw the magazine clips recovered during the inventory search *prior* to the search. The district court found the evidence was insufficient to establish either fact. Indeed, at the sentencing hearing, the district court stated it found Balderrama's testimony that he saw the magazine clips prior to conducting the inventory search "suspicious" in light of the other evidence in the case. Despite the court's concerns, however, it "did not conclude . . . the officer was lying." Furthermore, whether Officer Balderrama lied at the suppression hearing is irrelevant in determining whether the good-faith exception applies in this case: it has no bearing on the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal . . . [considering] all of the circumstances." *Leon*, 468 U.S. at 922 n.23. Application of the good-faith exception is not contingent on "the subjective good faith of individual officers." *McCane*, 573 F.3d 1037, 1041 n.2 (quotation omitted); *see also United States v. Herring*, 555 U.S. 135, 145-46 (2009) ("The pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers." (quotation omitted)). Additionally, instead of supporting Madden's argument the good-faith exception should not apply here, *Davis* forecloses it. In *Davis*, the Court stated that "the harsh sanction

-14-

of exclusion" does not apply to objectively reasonable law enforcement activity because "[e]xcluding evidence in such cases deters no police misconduct and imposes substantial social costs." 131 S. Ct. at 2429, 2434. Thus, the Court held that where "police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Id.* at 2434.

## B.    Motion to Quash the Indictment

This court reviews the denial of a motion to dismiss based on preindictment delay for abuse of discretion. *United States v. Colonna*, 360 F.3d 1169, 1176 (10th Cir. 2004); *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1988). As to Madden's Sixth Amendment claim, we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Gould*, 672 F.3d 930, 935 (10th Cir. 2012).

Madden argues the government deliberately deprived him of his Fifth Amendment right to due process and Sixth Amendment right to a speedy trial by waiting four years from the date of the offense to seek a federal indictment. Thus, he asserts the district court abused its discretion in denying his motion to quash the indictment for excessive delay. We disagree. With respect to Madden's Fifth Amendment due process claim, "[p]reindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage." *United States v. Johnson*, 120 F.3d 1107,

-15-

1110 (10th Cir. 1997). Madden has not shown the delay caused actual prejudice. He argues that had his indictment in this case not been delayed, he would have had the opportunity to be sentenced in this case before he began negotiating the plea agreement associated with the state felony drug charges to which he pleaded guilty in February 2006. He asserts the plea negotiations in that case would inevitably have resulted in a sentence for those convictions that was concurrent with his federal sentence in this case. Thus, he argues the preindictment delay caused actual prejudice because the sentence he received in this case is consecutive to, rather than concurrent with, the sentence he received for the state drug convictions. "To constitute a showing of actual prejudice," however, "the defendant must show that he has suffered definite and not speculative prejudice." *Colonna*, 360 F.3d at 1177 (quotation omitted). The prejudice Madden claims he suffered is speculative. *See United States v. Uribe-Rios*, 558 F.3d 347, 358-59 (4th Cir. 2009) (holding the defendant's lost chance of serving state and federal sentences concurrently "cannot be used to establish prejudice for purposes of challenging pre-indictment delay"); *Metoyer v. Scott*, 70 F. App'x 524, 531 (10th Cir. 2003) (unpublished) (rejecting the defendant's argument that he suffered prejudice because he could have served concurrent sentences); *United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994) (concluding the defendant failed to show actual prejudice based on "his speculative contention that if the government had prosecuted him promptly, he could have served his state and federal sentences

concurrently"); *United States v. McCoy*, 977 F.2d 706, 711 (1st Cir. 1992) (rejecting as speculative defendant's claim that he was prejudiced because the preindictment "delay diminished the opportunity to serve concurrent time on the state and federal offenses"); *United States v. Sherlock*, 962 F.2d 1349, 1354 (9th Cir. 1989) (holding the defendant's argument that the preindictment delay prevented him from serving his sentence concurrently with an earlier sentence was "too speculative to establish actual prejudice"). Because Madden has not shown the preindictment delay caused actual prejudice, the delay is not a violation of his Fifth Amendment right to due process.

Madden's claim his Sixth Amendment right to a speedy trial was violated also fails. "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, depending on which comes first." *United States v. Muniz*, 1 F.3d 1018, 1024 (10th Cir. 1993). "'Arrest,' however, means federal arrest. Arrest by state authorities on state charges does not trigger the speedy trial provisions of the Federal Constitution." *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995); *see also Muniz*, 1 F.3d at 1024 ("Where the initial arrest is solely for violation of state law, then it is generally accepted that this arrest does not mark the commencement of the speedy trial right as to a subsequent federal charge, even if based on the same activity." (quotation omitted)). The probable cause affidavit and the information underlying Madden's initial arrest, on March 3, 2005, show he was arrested for violating Okla. Stat.

Ann. tit. 21, § 1283. Thus, Madden's Sixth Amendment speedy trial right did not attach on March 3, 2005. Instead, his speedy trial right attached on February 13, 2009, the date he was arrested on federal charges. Madden was indicted on those charges a few weeks later, on March 3, 2009. Thus, the preindictment delay did not violate Madden's Sixth Amendment right to a speedy trial. *See Johnson*, 120 F.3d at 1109.

**IV.    Conclusion**

For the foregoing reasons, this court **affirms** the district court's denial of Madden's motions to suppress and to quash the indictment for excessive delay.