FILED
United States Court of Appeals
Tenth Circuit

August 14, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

BRIAN HEATH COLLINS,

     Defendant-Appellant.

No. 12-6291

(D.C. No. 5:12-CR-00076-HE-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.[**]

_____

A federal grand jury indicted Defendant Brian Heath Collins with knowingly and intentionally manufacturing 100 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Defendant moved to suppress the evidence against him, but the district court denied the motion. Defendant entered a conditional guilty plea, expressly reserving the right to appeal the district court's order denying his motion to suppress. Defendant now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the parties' briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

I.

On January 31, 2012, at approximately 9:45 p.m., Cotton County, Oklahoma, Deputies Tim King and David Johnson responded to a call reporting a strong chemical odor coming from a residence off of Oklahoma State Highway 70. Because of prior incidents regarding narcotics transactions, Deputy King was familiar with the residence as well as the occupant James Smith. Deputy King was also familiar with the odor of methamphetamine labs because he had searched a number of labs over the years and received extensive methamphetamine lab training from both the Drug Enforcement Administration (DEA) and the Oklahoma Bureau of Narcotics. Upon arrival, Deputies King and Johnson identified the odor coming from Smith's barn as one commonly associated with the manufacture of methamphetamine. Deputy King also observed Defendant's pickup truck and a white-colored van he recognized as belonging to Roger Parker. Deputy King was familiar with both Smith and Parker and their prior methamphetamine-related convictions. Around 10:45 p.m., deputies began the application process for a search warrant and began a stakeout of the Smith residence to ensure no one left.

Just prior to midnight, both the pickup and the van left. Suspecting it contained methamphetamine or a methamphetamine lab, Deputy King stopped Parker's van. Smelling a chemical odor on Parker and passenger Tammy Yates, Deputy King told Parker he knew they had been "cooking dope." Parker "ducked his head and shook his head yes" and consented to a search of his van in which no evidence was found. For the same reasons, two other deputies stopped Defendant's pickup. They reported Defendant

- 2 -

was extremely nervous and had a very strong chemical odor coming from his person. A consensual search of his pickup also revealed no evidence.

At approximately 12:15 a.m., deputies executed a search warrant on the Smith property, where they found multiple items associated with the production of methamphetamine, including a drying table with pink residue, a complete methamphetamine lab, and a substance later confirmed to be methamphetamine. Officers made contact with Smith, who admitted that he had been "cooking dope" with Parker and Defendant. Based on the evidence collected in Smith's home and barn, deputies arrested Smith, Parker, Yates, and Defendant. Pursuant to a subsequent search warrant, authorities obtained cellular phone records that outlined Defendant's and others' plan to obtain pseudoephedrine from pharmacies in both Oklahoma and Texas to manufacture methamphetamine.

Prior to pleading guilty, Defendant moved to suppress all physical evidence, oral statements, cellular phone text messages, and any other evidence obtained as a result of the search of Smith's residence and the allegedly illegal stop of his truck. The district court denied Defendant's motion, holding that Defendant lacked standing to challenge the search of Smith's residence and that the stop of his pickup did not violate the Fourth Amendment. Defendant appeals the denial of his motion to suppress only with respect to the stop of his pickup. Defendant argues that at the time he was stopped, the evidence was insufficient to support the stop and thus any evidence obtained as a result must be suppressed as "fruit of the poisonous tree."

II.

In reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the Government. United States v. Madden, 682 F.3d 920, 924–25 (10th Cir. 2012). We accept the district court's factual findings unless they are clearly erroneous. Id. at 924. The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law we review *de novo*. Id. Here, Defendant does not challenge the district court's factual findings, but rather their legal significance. Thus, our review is *de novo*. To warrant suppression, a defendant must prove: (1) illegal government conduct, and (2) a "nexus between the illegality and the challenged evidence." United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir. 2001).

A.

We turn first to the legality of Defendant's stop. Defendant does not develop an argument concerning the length of his stop or the legality of his subsequent arrest. Consequently, our review is limited to the legality of the stop at its inception.[1] Defendant argues that at the time he was stopped, "there was not a single shred of evidence that could be considered legally sufficient to support the stop." Appellant's Br. at 5. According to Defendant, "[t]he allegation that an odor was coming from Mr. Smith's

---

[1] Defendant states that his "stop, detention, and ultimate arrest . . . were in violation of his [Fourth Amendment] rights" Appellant's Br. at 6. However, he fails to develop an argument regarding either the length of the detention or the ultimate arrest. "The court will not consider issue[s] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." United States v. De Vaughn, 694 F.3d 1141, 1155 n.9 (10th Cir. 2012) (citation omitted).

property is insufficient to support a finding of probable cause to believe that at the time his vehicle was stopped, [Defendant] was engaged in illegal activity."[2] Id. He further contends that he "did not commit a traffic violation[,]" that "no member of law enforcement witnessed [him] engage in any illegal activity[,]" and the "sole reason he was stopped was because he was leaving the Smith residence." Id.

In Terry v. Ohio, 392 U.S. 1, 22 (1968), the Supreme Court recognized that a police officer may "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." In assessing the constitutionality of an investigatory stop at its inception, we ask whether the totality of the circumstances demonstrates that law enforcement officers had reasonable suspicion that criminal activity may have been afoot. See United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez–Galaviz, 495 F.3d 1203, 1205–06 (10th Cir. 2007). For reasonable suspicion to exist, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

We now consider the factors that contributed to the officers' suspicion in this case. Officers may "draw on their own experience and specialized training to make inferences

---

[2] Defendant relies on Simpson v. Bellah, No. 01–CV–1167–L, Doc. 63 (W.D. Okla. Aug 28, 2002), a civil case in which a jury found that a search warrant obtained on the basis of a smell coming from plaintiff's property was insufficient to establish probable cause. Defendant's argument is misplaced for several reasons. The issue is whether the deputies had reasonable suspicion supporting the investigatory stop of his pickup. Probable cause is a higher standard that the officers need not meet. A jury finding to the contrary is not controlling. Furthermore, in the present case, other factors contributed to the officers' suspicion.

. . . and deductions . . . that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting U.S v. Cortez, 449 U.S. 411, 418 (1981)). Because of his extensive training from both the DEA and the Oklahoma Bureau of Narcotics, Deputy King identified the odor as one commonly associated with methamphetamine labs. Moreover, "[t]he fact that conduct occurs in an area known for criminal activity [is an] appropriate factor[ ] to consider in determining whether reasonable suspicion exists." United States v. McHugh, 639 F.3d 1250, 1257 (10th Cir. 2011) (citation omitted). See also Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Here, Deputy King was well-acquainted with the Smith residence as a place commonly associated with narcotics transactions. We have held that the time of night is a relevant factor in determining the existence of reasonable suspicion. See United States v. Clarkson, 551 F.3d 1196, 1202 (10th Cir. 2009). And deputies saw Defendant leaving Smith's residence around midnight. Additionally, we have repeatedly held that an officer's detection of the smell of drugs can be an independently sufficient basis for probable cause. See United States v. West, 219 F.3d 1171, 1178 (10th Cir. 2000) (collecting cases). Admittedly, in this line of cases, the smell has been coming from the vehicle itself. Whether the smell supports a finding of reasonable suspicion to stop Defendant's pickup presents a slightly different question, as the smell came from the Smith residence and not from his pickup. However, this difference need not detain us long.

In Hensley, the Supreme Court recognized that "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved with or is wanted in connection with a completed felony, then a Terry stop may

be made to investigate that suspicion." United States v. Hensley, 469 U.S. 221, 229 (1985). Thus, the facts contributing to the officers' reasonable suspicion need not come from the defendant's current activity. However, the Court did not decide whether Terry stops to investigate all past crimes, however serious, are permitted. Id. Instead, the Court indicated that the proper test for determining the constitutionality of an investigatory stop is a balancing of the "nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." Id. at 228 (citing United States v. Place, 462 U.S. 696, 703 (1983); Michigan v. Summers, 452 U.S. 692, 698–701 (1981)). An investigatory stop is by definition "brief" and "nonintrusive." See United States v. Griffin, 7 F.3d 1512, 1516 (10th Cir. 1993).

Relying on Hensley, in United States v. Moran, 503 F.3d 1135, 1142 (10th Cir. 2007), we upheld the constitutionality of an investigatory stop where the defendant had allegedly committed criminal trespass just minutes before the officers stopped him. While we acknowledged that the governmental interest in solving crime may be weaker when police have alternative methods of investigating the crime, we reasoned that the governmental interest in solving the crime under such circumstances was strong. "To restrain police action in such a situation would be to require police to turn their backs on potential criminal activity and to enable the suspect to flee." Id. at 1142 (internal citation and quotation marks omitted). Additionally, we find U.S. v. Chantharath, 705 F.3d 295 (8th Cir. 2013), instructive. In Chantharath, the Eighth Circuit upheld a finding of reasonable suspicion to stop a van, where among other facts, officers possessed information that the defendant had been selling drugs from motel rooms and later

observed him leaving the hotel in the van. Chantharath, 705 F.3d at 299. The officers followed the van. Although the officers did not observe the driver commit any traffic violations, they stopped the vehicle to question its occupants. Id. In rejecting defendant's motion to suppress, the court reasoned that "the officers' knowledge of [the defendant's] prior drug dealing and the suspicious activity associated with [his] motel room gave the officers reasonable suspicion to stop the white van and question its occupants." Id. at 302. As in the present case, the officers had reasonable suspicion that the defendant had just engaged in criminal activity. This suspicion justified stopping the defendant's vehicle, even though the facts amounting to reasonable suspicion were unrelated to the vehicle itself.

The reasonable suspicion analysis is a totality of the circumstances analysis. See McHugh 639 F.3d at 1256. In the present case, Cotton County deputies were familiar with the Smith residence and its history with narcotics, they smelled an odor associated with the production of methamphetamine coming from the Smith residence, and they then observed two vehicles leave the residence around midnight. The officers had reasonable suspicion to stop Defendant's pickup based on their reasonable suspicion he was involved in illegal activity—the possession of methamphetamine. Thus, the district court did not err in denying Defendant's motion to suppress.

B.

But even if reasonable suspicion did not support the stop, Defendant has not identified any evidence that should be suppressed. Defendant concedes that law enforcement obtained no evidence during the search of his pickup. Rather, he seeks to

- 8 -

exclude "all evidence subsequently obtained including but not limited to physical evidence, text messages and statements attributed to [him] while in custody . . . ." Appellant's Br. at 6.

The exclusionary rule prohibits the introduction of evidence seized during an unlawful search and of testimony acquired during an unlawful search. See Weeks v. United States, 232 U.S. 383 (1914); Silverman v. United States, 365 U.S. 505 (1961). "[T]he exclusionary rule also prohibits the introduction of derivative evidence . . . that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search . . . ." Murray v. United States, 487 U.S. 533, 536–37 (1988) (internal citation and quotation marks omitted). See also Wong Sun v. United States, 371 U.S. 471, 484–85 (1963). Suppression of evidence is not justified unless "the challenged evidence is in some sense the product of illegal governmental activity." Segura v. United States, 468 U.S. 796, 815 (1984). "At a minimum, a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000) (footnote omitted).

Defendant does not identify any physical evidence resulting from his seizure or any statements he made while in custody. To the extent Defendant challenges the evidence obtained at Smith's residence as "fruit of the poisonous tree" or derivative evidence from his alleged illegal stop, the claim fails. Deputies stopped Defendant's pickup at approximately 12:00 a.m. They executed the search warrant for the Smith residence around 12:15 a.m. The officers sought the warrant prior to Defendant's leaving

the Smith residence and established probable cause without mention of Defendant or his conduct. Thus, the search warrant for the Smith residence leading to the ultimate discovery of the physical evidence and testimony in question had no connection to Defendant's allegedly illegal stop.

Defendant has also failed to establish the requisite factual nexus between his stop and the subsequent search of his cellphone records. The record does not include a copy of the warrant authorizing the search of defendant's phone. The record merely shows that on the day following the arrests, during the property inventory process, one of the deputies found a Walgreens receipt in Yates' purse dated January 31, 2012, showing Yates had purchased pills containing pseudoephedrine. The deputy who found the receipt and Deputy King then sought search warrants for all defendants' cellphones. Defendant has not put forth any basis upon which to find a factual nexus between the stop and the evidence found in Defendant's cellular phone. "The defendant . . . bears the burden of demonstrating a factual nexus between the illegality and the challenged evidence." Nava-Ramirez, 210 F.3d at 1131 (citation omitted). Only if the defendant establishes this nexus must the government then prove "a break in the causal connection between the illegality and the evidence thereby obtained." United States v. Melendez–Garcia, 28 F.3d 1046, 1053 (10th Cir. 1994) (internal citation and footnote omitted).

Here, Defendant has failed to carry his burden of proof.

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge