**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

FONUA KIMOANA, also known as
Siong Fonua Vailea, also known as
Sione Moungloa, also known as Fokisi
Kimoana,

      Defendant - Appellant.

No. 03-4023

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:02-CR-232-PGC)**

---

Benjamin A. Hamilton, Salt Lake City, Utah, for Defendant-Appellant

Michele M. Christiansen, Assistant United States Attorney (Paul M. Warner,
United States Attorney for the District of Utah, with her on the brief), Salt Lake
City, Utah, for Plaintiff-Appellee.

---

Before **EBEL, ANDERSON,** and **HARTZ**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Defendant Fonua Kimoana ("Defendant") was convicted under 18 U.S.C.

§ 922(g) as a felon in possession of a firearm.  He now challenges the district

court's refusal to suppress the firearm as evidence. We hold that the entry and resultant search were justified by consent given by "Nick," a third party with both actual and apparent authority. Alternatively, once the officers' initial entry into the room was justified by Nick's consent, the subsequent search was justified by voluntary consent given by Patelo Vake. Accordingly, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## BACKGROUND[1]

On March 12, 2002, Officer Robert Miner was sitting in his car after having cleared an alarm drop at a business near a Days Inn in Midvale, Utah. A man approached Officer Miner, and looked suspicious because he was "jittery, looking around and appeared to be very nervous." The man turned out to be Nitokalisi Fonua ("Nick"),[2] who told Officer Miner that he had stolen a white GMC Blazer that was parked nearby. Nick led Officer Miner to the car, and the officer noticed a sawed-off shotgun in the back seat with markings that looked gang-related. Nick told Officer Miner that he was staying in a room at the Days Inn that he was sharing with his "cousins" (meaning people he knows from the

---

[1]Except where otherwise noted, all of the following facts were taken from uncontested findings of fact in the district court's opinion dated October 25, 2002.

[2]Because the name is similar to Defendant's name, the parties refer to Nitokalisi Fonua by his nickname, Nick.

streets).  The registered renter of this room turned out to be Defendant.  Nick said that he did not care if the officer searched the room for the vehicle key.  In response to Officer Miner's request whether he could use Nick's room key to enter the room if nobody answered the door, Nick again said that he did not care.

Officer Miner called other officers to the scene and filled them in on the details above.  He gave Nick's motel key to Officer Mohr, Sargeant Kent Jarvis, and Officer Scott Nesbitt.  Officer Miner stayed with Nick while the other officers knocked on the door of the motel room to retrieve the car key.  As the district court explained, the officers "had their weapons drawn because they suspected that the people in the room may be gang members and that there may be other weapons in addition to the sawed-off shotgun already found."  Additionally, Officer Nesbitt believed that the other people in the motel room may be accomplices to Nick's vehicle theft.

In response to the officers' knock, Patelo Vake opened the door.  Defendant was also in the room, but did not prevent Vake from answering the knock on the door.  As the door opened, Officer Nesbitt saw a woman on the bed pointing an unidentified black object at the wall.[3]  At that point, the officers ordered the three people in the room to show their hands, and they conducted a pat down search of

---

[3]Upon further investigation, the officers later learned that this object was a remote control for the television.

the occupants to check for weapons.  As soon as the officers concluded that no weapons posed a threat to their personal safety, they holstered their guns.

While the officers were in the room, Officer Miner advised them via radio that he had found a 9mm shell casing inside the stolen Blazer, and that the occupants of the room may be involved in a drive-by shooting and may have more weapons.  Officer Nesbitt asked Vake for consent to search the room for weapons. The district court found Officer Nesbitt's testimony credible when he described the atmosphere in the room as "calm" at this point.  Immediately after the first request, Vake gave the officers his consent to search the room.  After obtaining Vake's consent, the officers searched the room and found a long-barreled revolver under the mattress.

On April 17, 2002, Defendant was charged by a federal grand jury with possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g). Defendant filed a motion to suppress the firearm found in his hotel room on two grounds: (1) the officers' initial entry into the room violated the Fourth Amendment as it was based on consent by a third party (Nick) without actual or apparent authority and it exceeded the scope of Nick's consent to search for the vehicle key, and (2) the officers' subsequent search of the motel room violated the Fourth Amendment because Vake's consent was not "voluntary."  The district court denied this motion, and Defendant entered a conditional plea of guilty,

preserving his right to challenge the district court's denial of his motion to suppress. Defendant was later sentenced to twenty-seven months in prison, followed by thirty-six months of supervised release. Judgment was entered on January 30, 2003, and Defendant filed a timely notice of appeal from the district court's order on the motion to suppress on January 31, 2003.

## DISCUSSION

Standard of Review:

When reviewing a district court's denial of a motion to suppress, we will consider the totality of the circumstances and view the evidence in a light most favorable to the government. United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999). We will accept the district court's factual findings unless those findings are clearly erroneous. Id. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Id.; United States v. Broomfield, 201 F.3d 1270, 1273 (10th Cir. 2000). The ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo. Long, 176 F.3d at 1307; United States v. Little, 60 F.3d 708, 712 (10th Cir. 1995).

Analysis:

We hold that the officers' entry into the motel room and subsequent search was justified by Nick's consent, as he was a third party with actual and apparent authority, and the officers did not exceed the scope of his consent. Alternatively, once the officers' initial entry into the motel room was justified by Nick's consent, their subsequent search was justified by Vake's voluntary consent.

**A.  The Officers' Entry and Search of the Motel Room as Justified by Nick's Consent**

No party disputes that Nick gave Officer Miner consent to search the motel room. The dispute centers on whether Nick had actual and/or apparent authority to give such consent, and whether the officers acted within the scope of his consent in executing the subsequent search of the room. We answer each question in the affirmative.

**1.  Nick had actual and apparent authority to consent to the entry and search of the motel room.**

Defendant argues that Nick lacked actual or apparent authority to consent to the officers' entry into and search of the motel room. The crux of his argument is that Nick was not the registered renter of the room and that the officers were aware of the ambiguity surrounding who rented the room. As described below,

we disagree with Defendant and find that Nick had both actual and apparent authority to consent.

Overnight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property on which they are staying. Minnesota v. Carter, 525 U.S. 83, 89-90 (1998); Stoner v. California, 376 U.S. 483, 489-90 (1964).[4] The Fourth Amendment generally prohibits the government from making a warrantless entry into a person's residence to search for specific objects. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). This general rule has a few exceptions, however. "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). "The [Fourth Amendment] prohibition does not apply . . . to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises." Rodriguez, 497 U.S. at 81 (citations omitted).

A third party's consent to search is valid if that person has either the "actual authority" or the "apparent authority" to consent to a search of that

---

[4]See also United States v. Thomas, 372 F.3d 1173, 1176 (10th Cir. 2004) ("Further, we have held that even social guests who do not stay the night have a reasonable expectation of privacy in the host's home and may therefore challenge a search of the home on Fourth Amendment grounds.").

property.  United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1230 (10th Cir. 1998) (citing Rodriguez, 497 U.S. at 188).   The test for "actual authority" was articulated in United States v. Matlock, 415 U.S. 164, 171 (1974), and interpreted by the Tenth Circuit in United States v. Rith, 164 F.3d 1323, 1329 (10th Cir. 1999).   In Rith, we stated that "a third party has authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." Id.  Therefore, the gravamen of the "actual authority" rule is that it is reasonable to recognize that "any of the co-habitants has the right to permit the inspection in his own right and . . . the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171 n.7.

The Supreme Court set forth the test for "apparent authority" in Rodriguez, 497 U.S. at 186-88.  "Rodriguez held that the Fourth Amendment is not violated when officers enter without a warrant when they reasonably, although erroneously, believe that the person who consents to their entry has the authority to consent to this entry." Gutierrez-Hermosillo, 142 F.3d at 1230.[5]  The "apparent

_____

[5]Defendant argues that Gutierrez-Hermosillo is inapposite here, insisting that it involved only the question of whether a minor could provide such third-party consent.  This is an incorrect reading of the case, as the court dealt with the consenter's minority as one factor in the consideration of whether an officer could reasonably believe that the minor had authority to consent under these rules.  The relevance of the case is in no way limited to the minority issue, as the court

(continued...)

- 8 -

authority" test for determining the reasonableness of the officer's belief is an objective one: "[W]ould the facts available to the officer at the moment . . . warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises?" Id. (quoting Rodriguez, 497 U.S. at 188). Police officers must evaluate the surrounding circumstances in order to determine whether a reasonable person would "act upon [the invitation] without further inquiry." Rodriguez, 497 U.S. at 188.

Although we review for clear error the factual findings underlying the district court's determination, we review de novo the determination of the reasonableness of an officer's belief in the consenter's authority. See Gutierrez-Hermosillo, 142 F.3d at 1229-30.

In this case, Defendant argues that Nick lacked "actual authority" because he was not the registered renter of the motel room. However, the Supreme Court has instructed,

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of

---

[5](...continued) investigated other factors in addition to age when it concluded that the consenter indeed had authority to consent. "These facts are sufficient to establish the officers' reasonable belief that Nora had mutual use of the motel room and that Defendant assumed the risk that she would permit the officers to enter the motel room." Gutierrez-Hermosillo, 142 F.3d at 1231.

property, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes[.]

Matlock, 415 U.S. at 171 n.7. Although Defendant was not the registered guest who had paid for the room, he had stayed there overnight, left his possessions there, and carried a key to the room. This supports a finding that Defendant had joint access or control over the room, and thus had actual authority to consent.

Even if Nick lacked actual authority, however, his consent would be valid if Officer Miner reasonably believed that Nick had such authority. Defendant argues that Nick lacked apparent authority because he told Officer Miner that the room was not his and thus Officer Miner's belief that Nick possessed authority was unreasonable. Defendant is correct that where an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent. In United States v. Salinas-Cano, we quoted with favor the D.C. Circuit's interpretation of Rodriguez on this point: "The burden [of proving effectiveness of consent] cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry." 959 F.2d 861, 864 (10th Cir. 1992) (quoting United States v. Whitfield, 939 F.2d 1071, 1075 (D.C. Cir. 1991)) (emphasis omitted). Warrantless entry is unlawful without further inquiry if "circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent." Id.;

(quotation omitted), see also United States v. Rosario, 962 F.2d 733, 738 (7th Cir. 1992); Kaspar v. City of Hobbs, 90 F. Supp. 2d 1313, 1319 (D. N.M. 2000).

If we viewed Nick's statement that it was not his room in a vacuum, any consent to search given by Nick would obviously be ambiguous at the very least. In that case, the government would not have met its burden to show effective third-party consent, as the officers did not make any further inquiry into Nick's authority to consent. See Salinas-Cano, 959 F.2d at 864. However, we do not view these facts in a vacuum, and the totality of the circumstances in this case demonstrates that the officers had sufficient information reasonably to believe in Nick's authority to consent. Although Nick was not the registered property owner or renter, Officer Miner knew that Nick had a key to the room and that he had stayed there with his "cousins." Nick is in the position of the consenter in Gutierrez-Hermosillo, who was not the registered renter of the motel room, but presented facts "sufficient to establish the officers' reasonable belief that [she] had mutual use of the motel room and that Defendant assumed the risk that she would permit the officers to enter the motel room." Gutierrez-Hermosillo, 142 F.3d at 1231. Therefore, the officers' reliance on Nick's apparent authority was justified.

**2.      Officers did not exceed the scope of Nick's consent.**

Defendant argues that even if Nick had authority to consent, the consent given was limited to permitting entry only if nobody was in the room. According to Defendant, the officers thus exceeded the scope of consent when they entered the room after Vake answered the door. We disagree, and find that the district court did not clearly err in finding that Nick's consent was not so narrow.

"The scope of a search is generally defined by its expressed object." Florida v. Jimeno, 500 U.S. 248, 251 (1991); see also United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir. 1997) (noting that "[t]he scope of a search is generally defined by its expressed object and is limited by the breadth of the consent given") (quotation omitted). We apply an objective reasonableness test to measure the scope of a person's consent: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id. (quoting Jimeno, 500 U.S. at 251).

Consent to search for specific items includes consent to search those areas or containers that might reasonably contain those items. Jimeno, 500 U.S. at 251; United States v. Wacker, 72 F.3d 1453, 1470 (10th Cir. 1995) (discussing Jimeno); see also United States v. Zapata, 180 F.3d 1237, 1243 (11th Cir. 1999) ("A general consent to search for specific items includes consent to search any compartment or container that might reasonably contain those items."). Whether

a search remains within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances, and a trial court's findings will be upheld unless they are clearly erroneous. United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990). In ascertaining whether officers exceeded the scope of consent, the court must view the facts in the light most favorable to the government. Id. at 1514-15.

In the instant case, Officer Miner testified that he asked Nick "if we could obtain the keys to the vehicle so we could turn those back over to the owner," and that Nick "said they were in the room somewhere lost." He then "asked him if we could go up to the room and retrieve the keys" and "[Nick] said he didn't care." Officer Miner then testified that after discovering the room key on Nick's person, he asked "if no one answers the door, if we could utilize that key to access that room to locate the keys to the vehicle, and he said he didn't care." Officer Jarvis testified that Miner had told him that "we had permission from one of the people outside to go inside[.]" Nick testified that he told Officer Miner that he believed the keys were lost in the motel room, and that he gave the officer permission to search the room for the key: "I say it was in my room and, yes, if he can search it. And I say, I don't care." He also answered "Yes" in response to the question, "You told the officers you didn't care if they went to the room?"

Viewing the evidence in the light most favorable to the government, the district court did not commit clear error in interpreting this evidence to mean that Nick had indeed given the officers consent to enter the motel room for the purpose of searching for the vehicle key. The record supports the district court's holding that "any limitation to [Nick's] consent pertained (at most) to using the card key to enter the room if no one answered the door" and that the consent was not narrowed to entry only if nobody was in the room. Although Officer Miner testified elsewhere that his own subjective understanding of Nick's consent was that it was limited to entry if nobody was there, the standard is an objective one and the officer's own understanding is thus not dispositive. Rather, the court had to decide whether a typical reasonable person would have thought that Nick's permission was to enter the room to find the vehicle key (using the motel room key if nobody was there), or whether a typical reasonable person would have thought that the permission was limited to entry only if nobody was there. See Anderson, 114 F.3d at 1065. Based upon our review of the officers' and Nick's testimony regarding the consent given, we cannot say that the district court was clearly erroneous in opting for the first interpretation.

Additionally, no party disputes that the gun was found in a place where a car key would reasonably fit (under a mattress).[6] Although the officers executing the search were looking for weapons rather than the vehicle key, the subjective motivation of the officers executing the search is irrelevant. The district court thus did not clearly err in finding that the search did not exceed the scope of Nick's consent.

### 3.    Summary

In conclusion, we affirm the district court on the ground that Nick's consent was made with actual and apparent authority, and the officers' search did not venture outside the scope of that consent.

**B.    Once the Officers' Entry Into the Motel Room was Justified by Nick's Consent, the Subsequent Search was also Justified by Vake's Consent**

Once inside the motel room, the officers did a protective pat-down of the occupants for weapons, holstered their guns, and asked Vake for consent to search

---

[6]Defendant argues in passing that the intensity of police activity was not necessary to accomplish the stated purpose of the search and thus exceeded the scope of consent. He cites a treatise that provides, "When a purpose is included in the [officer's] request, then the consent should be construed as authorizing only that intensity of police activity necessary to accomplish the stated purpose." 3 Wayne R. LaFave, SEARCH AND SEIZURE, 8.1(c), at 620 (3d ed. 1996). However, Defendant gives no facts to demonstrate that the officers used an unreasonable amount of force or intensity in executing the search for the car key.

the room for weapons. Because Vake voluntarily consented to this subsequent search, the subsequent search was justified and the gun that was found during this search need not have been suppressed.

After the officers had entered the room and performed the pat down with guns drawn, Officer Miner advised them by radio that he had found a 9mm shell casing inside the stolen vehicle, and that the occupants of the room may be involved in a drive-by shooting and may have more weapons. Immediately after the officers holstered their weapons, Officer Nesbitt turned to Vake, the person who had opened the door, and asked for his permission to search the motel room for weapons. Vake consented, and the subsequent search yielded the gun that formed the basis of Defendant's charge. Defendant argued to the district court that Vake's consent was involuntary.[7] However, the district court made a finding

---

[7]Defendant does not seem to dispute that Vake had at least apparent authority to consent to the search of the motel room. Because Vake opened the door without consent or permission from Defendant (who was present in the room), this weighs in favor of apparent authority. As the Seventh Circuit stated in Rosario, "By allowing [consenter] unfettered access to the door, the appellants also gave him discretion to decide whom to admit, thereby sacrificing some degree of their privacy" and assuming the risk of this situation occurring. 962 F.2d at 737. Vake acted as "the keeper of the door." See id. at 738. Additionally, as the district court pointed out, the fact that Defendant never objected to Vake's consent or the subsequent search also supports a finding of apparent authority on Vake's part. See id. (finding apparent authority in part because the defendants did not "approach the doorway, voice their objections to the proposed entry, or otherwise attempt to intercede in the exchange between [consenter] and the police"); United States v. Morales, 861 F.2d 396, 400 (3d Cir.

(continued...)

- 16 -

of fact that Vake's consent was indeed voluntary, and as described below, we find no clear error in this determination.

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freedly and voluntarily given." Bustamonte, 412 U.S. 218, 222 (1973) (quotations omitted). This means that the consent cannot be "coerced, by explicit or implicit means, by implied threat or covert force." Id. at 228. Consent is voluntary if there is no indication of either "force or intimidation." United States v. Dewitt, 946 F.2d 1497, 1500 (10th Cir. 1991). "Voluntariness is a question of fact to be determined from all the circumstances[.]" Schneckloth, 412 U.S. at 248-49.

Defendant focuses on the facts that the officers entered the motel room with guns drawn, raising their voices at the occupants and ordering them to put their hands where the officers could see them. After performing a pat down, the officers put their weapons back in their holsters, the atmosphere was described as "calm," and then Officer Nesbitt "immediately" asked Vake for consent to search

---

[7](...continued)
1988) (noting that the defendant's "silence during [officer's] inspection of the car is material in assessing [consenter's] authority"). It is likely that Vake also had actual authority, since he had stayed in the room the previous night and Defendant does not point us to any evidence that Vake's control over the room was somehow limited.

- 17 -

the room. Defendant argues that this chain of events constituted subtle coercion or show of force sufficient to render Vake's consent involuntary.

Because we review for clear error, it is not detrimental whether we may have agreed with Defendant had we been in the district court's position. See Dewitt, 946 F.2d at 1500 (stating that under the clear error standard of review, "[w]e must not substitute our judgment for that of the district court"). Rather, if there is "any rational basis" for the district court's finding on this fact-based inquiry, we must affirm. Gutierrez-Hermosillo, 142 F.3d at 1231.

Although there may be support for Defendant's view, there is indeed support for the district court's view in this case. For example, several courts have found a defendant's consent to be voluntary where the officers approached the defendant with guns drawn, but then holstered them once the area was secured and before asking for consent to search. See e.g., United States v. Mitchell, 209 F.3d 319, 324 (4th Cir. 2000); United States v. Broussard, 80 F.3d 1025, 1036 (5th Cir. 1996); United States v. Alfonso, 759 F.2d 728, 741 (9th Cir. 1985); United States v. Jones, 154 F. Supp. 2d 617, 620-21 (S.D.N.Y. 2001).

The Seventh Circuit has also faced a couple of situations similar to that presented here, and it found that the district court did not commit clear error in deeming the consent to be voluntary. For example, in United States v. Taylor, the court found the consent to be voluntary even though "the initial shock of several

- 18 -

armed federal agents descending upon [defendant] may have understandably upset [him]." 31 F.3d 459, 463 (7th Cir. 1994). The consent was not coerced because "no agents placed a gun to [defendant's] head or threatened him in any other fashion, and . . . weapons were holstered and other indicia of authority . . . were taken off within a few moments of the agents' arrival[.]" Id. The court explained that the "initial melee" was "certainly unpleasant," but that there was "nothing so inherently coercive about such tactics," especially when the tactics were necessary to protect the safety of the agents. Id. at 463-64.

Similarly, in United States v. Rojas, the court found that the consent to search was voluntary, even though the officers approached the defendant's residence with guns drawn and ordered him to place his hands on the wall. 783 F.2d 105, 107-09 (7th Cir. 1986). After a pat down and survey of the apartment for safety, the officers holstered their guns and later testified that the atmosphere was "calm and controlled." Id. at 108. The totality of circumstances were not such that the defendant was coerced into granting consent to search. Id. at 107-09; see also United States v. Evans, 27 F.3d 1219, 1223, 1230 (7th Cir. 1994) (same).

In the instant case, the district court examined the totality of circumstances and acknowledged that "the actions of the officers in sweeping the room with guns drawn and patting down the occupants would be potentially intimidating

- 19 -

events that could, in some circumstances, ultimately produce an invalid or involuntary consent." However, the court found Officer Miner's testimony credible when he described the atmosphere in the room as "calm," and the court emphasized the fact that the officers had holstered their weapons before requesting consent from Vake. We view these facts in a light favorable to the government, and agree with the courts that have upheld district court findings of voluntariness in situations similar to the one at hand. We thus hold that the district court's finding was indeed "rational." Gutierrez-Hermosillo, 142 F.3d at 1231.

Additionally, "the credibility of the witnesses at the suppression hearing is critical to a district court's consent determination." Id. As the Seventh Circuit pointed out in United States v. Pedroza, "We give special deference to such credibility determinations, which can virtually never be clear error." 269 F.3d 821, 826 (7th Cir. 2001). Because the district court found Officer Miner's description of the calm atmosphere to be credible, and because the weapons were holstered before requesting consent, we do not find clear error in the factual determination that Vake's consent was voluntary.

In summary, we affirm the district court's order on the alternative ground that the entry was justified by exigent circumstances and the subsequent search was justified by Vake's voluntary consent.

**CONCLUSION**

Under either of the two alternative analyses set forth above, we AFFIRM the district court's denial of Defendant's motion to suppress.