**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

EDGAR FLORES,

      Defendant - Appellant.

No. 15-4082
(D.C. No. 2:14-CR-00260-RJS-PMW-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

Edgar Flores was indicted on drug and firearms charges in the District of Utah. He filed a motion to suppress evidence seized during the search of a car rented to his wife. When that motion was denied, Mr. Flores entered a guilty plea conditioned on his right to appeal the district court's adverse ruling. That appeal is now before us.

We have jurisdiction under 28 U.S.C. § 1291. Finding no clear error in the district court's determination that police had consent to conduct the search, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

In May 2014, a grand jury indicted Mr. Flores on one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); one count of using a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of being an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g). The charges grew out of his arrest on May 6, 2014, when police found drugs, cash, a handgun, and a digital scale in a car Mr. Flores had been driving. Mr. Flores filed a motion to suppress, arguing the police lacked a warrant to search the vehicle and no exception to the warrant requirement applied.

## A. *Factual History*

On September 3, 2014, the district court conducted an evidentiary hearing at which Mr. Flores's wife and three of the arresting officers testified. The following facts are largely taken from the testimony presented at that hearing.

### 1. Attempted Arrest of Mr. Flores

The South Salt Lake police received a tip that Mr. Flores had been involved in an April 2014 drug-related shooting at the Southern Exposure strip club. On May 6, 2014, Officer Chad Leetham and several other members of the South Salt Lake Police Department attempted to arrest Mr. Flores at his West Valley City townhome. Mr. Flores, who had been exiting his front door when the officers pulled up, immediately re-entered the house and fled out the back door to evade capture.

His wife, Janeth Soto, was in the house when the officers arrived. She initially told police she did not know who had run through the house, but she later admitted, after

the police "asked her who Edgar was," that the man who escaped out the back door was Mr. Flores. ROA, Vol. 2 at 45.

While at Mr. Flores's house, police learned from Ms. Soto that she had recently rented a vehicle from Enterprise Rent-A-Car. Officer Leetham contacted the nearby Enterprise office. An employee told him Ms. Soto's vehicle was due to be returned by 4 p.m. Officer Leetham then relayed this information to officers in the narcotics unit.

2. **Stakeout at Enterprise**

That afternoon, Detective Clayton Anderson led a team of five officers to the Enterprise car rental in West Valley City. Three of the officers stationed themselves in two unmarked vehicles in the Enterprise parking lot; two other officers in a third unmarked vehicle were parked across the street. About 40 minutes later, Mr. Flores arrived in the rental car, with Ms. Soto in the front passenger seat and their daughter in the back. He parked the car in the lot while Ms. Soto entered the office to extend her lease.

As soon as Ms. Soto was inside, the officers surrounded the rental car with their vehicles to "box [Mr. Flores] in." ROA, Vol. 2 at 16. With their weapons drawn, they removed Mr. Flores from the rental, placed him in handcuffs, and moved him toward the rear of the vehicle. Someone in the leasing office who saw the arrest yelled "Guns, guns, guns," prompting Ms. Soto to rush out into the parking lot. ROA, Vol. 2 at 75. Detective Anderson, fearful that Ms. Soto's involvement could destabilize an already-tense situation, instructed her not to approach the site of the arrest. According to Detective Anderson, Ms. Soto was not free to leave at that time. Ms. Soto testified she was "scared

and frightened" for the safety of her daughter, who was still in the vehicle's back seat. ROA, Vol. 2 at 76.

In the next several minutes, one of the officers removed Ms. Soto's daughter from the rented vehicle and brought her to Ms. Soto, who had been anxiously demanding that they be reunited. Detective Anderson testified that after Ms. Soto's daughter had been returned to her and he had put away his weapon, he asked for permission to search the rental vehicle. When asked on cross-examination whether he was sure the child had been returned to Ms. Soto *before*—and not *after*—he requested consent, Detective Anderson responded that he "[c]ouldn't say 100 percent." ROA, Vol. 2 at 32. Ms. Soto allegedly "paused" in response to Detective Anderson's question, and he informed her she was free to say no. ROA, Vol. 2 at 17. According to Detective Anderson, Ms. Soto then agreed to allow the search.

Officer Jeff Snelten, who assisted with the arrest, confirmed that he heard Detective Anderson request consent and Ms. Soto grant it. But Ms. Soto testified she had no memory of being asked for her consent. She said she did not recall telling Detective Anderson he could search the car.

Detective Anderson's search of the vehicle turned up two dime bags of crystal methamphetamine, an envelope containing cash, and a .25 millimeter handgun. At this point, Detective Anderson testified, Ms. Soto told him, "You can't search my car. You can't do this." ROA, Vol. 2 at 19. Officer Snelten provided similar testimony. Ms. Soto said she asked one of the officers, "Don't you need a search warrant to search my car?" ROA, Vol. 2 at 78. When the officer said that no warrant was required because she had

consented to the search, Ms. Soto responded, "I did not—I do not remember you—I did not understand that." ROA, Vol. 2 at 78.

Detective Anderson continued his search. In the vehicle's trunk he discovered a backpack containing a large digital scale, a plastic cup full of heroin, and another tightly wrapped package of heroin. After Mr. Flores claimed ownership of the backpack, police took him into custody and transported him to the police station.

### B. *District Court's Ruling on the Motion to Suppress*

Mr. Flores contended in his briefing before the district court that Detective Anderson's warrantless search of the vehicle was not justified by any recognized exception to the warrant requirement. The Government argued Mr. Flores lacked standing to challenge the search of the vehicle, since it was rented to his wife and he had no possessory interest in the vehicle. And even if Mr. Flores had standing, the Government maintained, the police were not required to obtain a warrant because Ms. Soto consented to the search.

The district court held Mr. Flores had no "'legitimate possessory or ownership interest' in the rental car" and therefore lacked standing to challenge the search. ROA, Vol. 1 at 21 (quotation omitted). Assuming he did have standing, however, Mr. Flores's motion still lacked merit because the officers' search was permissible under the consent exception to the Fourth Amendment warrant requirement.

This latter holding rested on two factual findings. First, the district court found as a fact that Ms. Soto consented to the search of the rental car. Detective Anderson and Officer Snelten "both testified unequivocally" that Ms. Soto had given consent. ROA,

Vol. 1 at 22. The court found this testimony credible, especially in light of Ms. Soto's testimony that she "simply d[id] not remember giving Detective Anderson her consent." *Id.* Second, the court found that "under the totality of the circumstances, Ms. Soto's consent to search the rental car was given voluntarily." *Id.* As the court explained:

> The events at issue took place in late afternoon daylight, in the open parking lot of a publicly-visible business, and where there was at least one Enterprise employee on the scene. Although the entire situation was undoubtedly unnerving, there is no evidence of any threat or show of force made to frighten or intimidate Ms. Soto into consenting to the search. Detective Anderson testified that he had "absolutely" put away his firearm before he asked Ms. Soto if he could search the rental car, and Ms. Soto similarly testified that the police had put away their weapons after she left the Enterprise building. Ms. Soto and the law enforcement witnesses all testified that officers returned Ms. Soto's child to her moments after she came outside the rental car office. Detective Anderson testified this reunion occurred before he obtained her consent to search the rental car.

*Id.* at 22-23 (citations and footnote omitted).

The district court therefore denied Mr. Flores's motion to suppress. On April 2, 2015, Mr. Flores pled guilty to counts one (possession with intent to distribute) and two (using a firearm in furtherance of drug trafficking) of the indictment. The plea agreement preserved Mr. Flores's right to appeal the district court's denial of his motion to suppress, under Federal Rule of Criminal Procedure 11(a)(2). He received a sentence of 210 months in prison, followed by five years of supervised release. Upon release Mr. Flores, who is not a U.S. citizen, is to be remanded to the custody of Immigration and Customs Enforcement for deportation proceedings.

Mr. Flores filed a timely notice of appeal on April 29, 2015. *See* Fed. R. App. P. 4(b)(4); Doc. 50.

## II. **DISCUSSION**

Mr. Flores argues the district court erred by (1) concluding he lacked standing to challenge the search of the rental vehicle and (2) finding Ms. Soto voluntarily consented to that search. We need not address the former contention. Even assuming Mr. Flores had standing to challenge the search, the district court did not clearly err in finding the police had consent to conduct that search.[1] We therefore affirm.

### A. *Standard of Review*

"A denial of a motion to suppress is reviewed de novo." *United States v. Benoit*, 713 F.3d 1, 8 (10th Cir. 2013). Underlying fact findings are reviewed for clear error. *Id.*

"Whether a person gave voluntary consent is a question of fact to be determined by the totality of the circumstances and is reviewed for clear error." *United States v. Salas*, 756 F.3d 1196, 1203 (10th Cir. 2014). "A district court's factual finding is clearly erroneous when it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013) (quotation omitted).

"The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *Id.*

---

[1] "[R]eference to 'standing' in a Fourth Amendment context is a misnomer because such standing is not jurisdictional. Rather, the question of whether a defendant can show a violation of his own Fourth Amendment rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *United States v. Creighton*, 639 F.3d 1281, 1286 n.2 (10th Cir. 2011) (quotation omitted). Accordingly, we may proceed to the question of consent without first deciding whether Mr. Flores had standing to object to the search of his wife's rental vehicle.

(quotation omitted). "We give special deference to such credibility determinations, which can virtually never be clear error." *United States v. Kimoana*, 383 F.3d 1215, 1226 (10th Cir. 2004) (quoting *United States v. Pedroza*, 269 F.3d 821, 826 (7th Cir. 2001)).

"Not only do we accept the district court's factual findings unless they are clearly erroneous, but we also construe the evidence in the light most favorable to the district court's ruling." *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009).

B.  *Analysis*

1.  **Legal Principles**

"Subject to limited exceptions, the Fourth Amendment prohibits warrantless searches." *Benoit*, 713 F.3d at 8 (citation omitted). "Voluntary consent to search is one such exception." *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012) (quotation omitted).

"The government bears the burden of showing the consent was voluntary by (1) proffering clear and positive testimony that consent was unequivocal and specific and freely given and (2) proving that this consent was given without implied or express duress or coercion." *Salas*, 756 F.3d at 1203 (quotation omitted). Consent may be either express or implied. *Jones*, 701 F.3d at 1317.

In determining whether consent was freely given, "some of the relevant considerations include":

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the [person who gave consent], the number of officers on the scene, and the display of police weapons. Whether an officer . . . obtains consent pursuant to a claim of lawful authority, or informs

[someone] of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

*Id.* at 1318 (quotation omitted).

2. **Application to Mr. Flores's Case**

Mr. Flores does not argue Ms. Soto lacked authority to consent to the officers' request to search. He also does not argue that her consent became invalid when she attempted to revoke it after officers discovered drugs, cash, and a handgun in the car. Instead, he asserts only that (1) Ms. Soto did not consent at all and, in the alternative, (2) to the extent she did consent, her consent was not voluntarily given.

The district court found Ms. Soto freely and voluntarily consented to a search of her rental car. Nothing in the record suggests this factual finding was clearly erroneous.

Ms. Soto and the officers provided conflicting testimony regarding whether Detective Anderson ever requested consent to search. Whereas Ms. Soto said merely that she did not remember being asked, Detective Anderson and Officer Snelten both testified without reservation that Ms. Soto had agreed to the search. The officers' testimony was more definitive, and the district court found it credible after observing all witnesses testify in person. Because "credibility determinations . . . can virtually never be clear error," *Kimoana*, 383 F.3d at 1226 (quotation omitted), we see no reason to disturb the district court's finding that Ms. Soto consented to the officers' search.

Ms. Soto also said she was "scared and frightened" before her daughter was returned to her. ROA, Vol. 2 at 76. But Detective Anderson testified he requested consent only after Ms. Soto had been reunited with her daughter, and that he had put

away his weapon by that point. Although he admitted on cross-examination that he was not "100 percent" certain he had returned Ms. Soto's daughter to her by the time he requested consent, ROA, Vol. 2 at 32, the district court could credit his testimony that he had done so, *Kimoana*, 383 F.3d at 1226.

There is no evidence in the record of "physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone" in Detective Anderson's interactions with Ms. Soto. *Jones*, 701 F.3d at 1318. As the district court explained, their conversation occurred in a public place during broad daylight, with at least one third-party witness present. The record provides no basis for concluding the district court clearly erred in finding Ms. Soto's consent was free and voluntary.

## III. CONCLUSION

Even assuming Mr. Flores had standing to object to the search of his wife's rental vehicle, that search was lawful. There is no record support for the proposition that the district court's consent findings were clearly erroneous. We therefore affirm.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge

- 10 -