NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JASON JAMES WALKER,            )
DOC #H18351,                   )
                               )
          Appellant,           )
                               )
v.                             )          Case No. 2D16-5577
                               )
STATE OF FLORIDA,              )
                               )
          Appellee.            )
_____)

Opinion filed April 6, 2018.

Appeal from the Circuit Court for Polk
County; Kelly P. Butz, Judge.

Howard L. Dimmig, II, Public Defender,
and Kevin Briggs, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Susan M. Shanahan,
Assistant Attorney General, Tampa, for
Appellee.


ROTHSTEIN-YOUAKIM, Judge.

          Jason James Walker pleaded no contest to possessing

methamphetamine, possessing drug paraphernalia, and maintaining a structure for

keeping controlled substances, but he reserved his right to appeal the trial court's denial

of his dispositive motion to suppress evidence.  Because we agree that Walker's friend did not have the apparent authority to consent to detectives' entry into Walker's residence, we reverse and remand for discharge.

### Factual Background[1]

The Polk County Sheriff's Office received information from the Department of Children and Families (DCF) that illegal drugs were being used and sold from Walker's residence while children were present.  Consequently, on December 5, 2015, two detectives went to Walker's residence to speak with him and to ask for consent to search the residence.

The detectives knocked on the front door, and Stephen Rodda opened it. One of the detectives asked Rodda his name and told him that they were at the residence for a DCF referral and were looking for Walker.  Rodda was calm and cooperative; he responded that Walker was "in the bedroom" and told the detectives, "I'll go get him, come in."  Rodda then opened the door wider, and both detectives stepped inside into the living room area.  At some point, Rodda said that he had been asleep on the sofa when the detectives knocked.  At no point did either detective ask Rodda if he lived at the residence or if he had the authority to let them in.[2]

The detectives observed a glass pipe in plain view on the sofa.  Rodda went to get Walker from one of the bedrooms, and they both returned to the living room.

---

[1]We take the facts from the trial court's written findings and from the testimony of the detectives, whom the trial court expressly found credible.

[2]It appears that the answer to both of those questions would have been no.  The State never has disputed that Rodda was only a guest at the residence; nor has it argued or presented evidence to support the conclusion that he nonetheless had actual authority to consent to the detectives' entry.

Thereafter, Rodda claimed the pipe as his, and Walker made incriminating statements and turned over methamphetamine and scales to the detectives.

Walker moved to suppress the evidence, arguing, among other things, that Rodda had lacked the authority to invite the detectives into his residence. The trial court concluded that the detectives had reasonably believed that Rodda had had the authority to do so "when Rodda was sleeping at the house when the known resident was present, and offered the consent to enter to the officers without being prompted."

## Analysis

"[I]n reviewing a trial court's ruling on a motion to suppress, this court must give deference to the trial court's factual findings if those findings are supported by competent, substantial evidence, but this court must review the trial court's ruling of law de novo." State v. Roman, 103 So. 3d 922, 924 (Fla. 2d DCA 2012).

The Fourth Amendment prohibits "the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). A law enforcement officer may enter a home without a warrant, however, if the officer obtains voluntary consent to the entry, id., and the officer may obtain consent "from a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected," United States v. Matlock, 415 U.S. 164, 171 (1974). A third party's authority to consent rests on the

> mutual use of the property by persons generally having joint
> access or control for most purposes, so that it is reasonable
> to recognize that any of the co-inhabitants has the right to
> permit the inspection in his own right and that the others
> have assumed the risk that one of their number might permit
> the common area to be searched.

Id. at 171 n.7. In other words, "[t]hird-party consent . . . is valid where it arises out of the mutual use of property by persons having joint access, or common authority over, or other sufficient relationship to the premises or effects to be inspected." Ferryman v. State, 919 So. 2d 710, 712 (Fla. 5th DCA 2006).

Even if it turns out that the third party lacked the actual authority to consent to the entry, the entry can nonetheless be upheld under the doctrine of apparent authority if the officer reasonably believed that the third party had the authority to consent. Hernandez v. State, 98 So. 3d 702, 705 (Fla. 5th DCA 2012) ("When the State seeks to justify a warrantless search by proof of voluntary consent, it may show that permission to search was obtained from a third person who possessed, or reasonably appeared to possess, common authority over or other sufficient relationship to the premises." (first citing Rodriguez, 497 U.S. 177; then citing Matlock, 415 U.S. 164)). The reasonableness of the officer's belief is evaluated under an objective standard based on the facts available at the time that consent was given, Rodriguez, 497 U.S. at 188, and the State bears the burden of proving that the officer reasonably believed that the third party who consented to the entry had the authority to do so, Williams v. State, 788 So. 2d 334, 336 (Fla. 5th DCA 2001).

Walker contends that the State failed to prove that the detectives reasonably believed that Rodda had the authority to consent to their entry into Walker's residence. We agree. We begin with the premise that "[t]he mere fact that an unknown person opens the door when a police officer knocks cannot, standing alone, support a reasonable belief that the person possesses authority to consent to the officer's entry." Cooper v. State, 706 So. 2d 369, 371-72 (Fla. 2d DCA 1998); see also Brunson v.

- 4 -

State, 149 So. 3d 139, 141 (Fla. 4th DCA 2014) (agreeing with the trial court's conclusion that officers' initial search of a hotel room was illegal "because a reasonable person would not conclude that the individual who answered the door had the authority to consent without confirming that he was the person renting the hotel room"); Williams, 788 So. 2d at 337 (holding that officers lacked a reasonable basis to believe that an unidentified woman with no known connection to a motel room other than her act of opening the door had authority to consent to their entry). Here, we have more than that "mere fact"—Rodda had identified himself to the detectives, and we assume for the sake of this analysis that before inviting them in, he had told them that he had been asleep on the sofa and that their knocking had awoken him.[3]

Rodda's identification, however, confirmed only that he was not Walker; it shed no light on his connection to the residence. And although intriguing, the fact that he was asleep on the sofa, presumably fully dressed, in the middle of the day was, by itself, ambiguous. While Rodda could have been asleep on the sofa because he lived in the residence, he could equally have been so for any number of other reasons, and neither detective testified to observing from the doorway any item—a clearly addressed package on the stoop, for example, or personal photographs hanging in the entryway—indicating Rodda's status as a "co-inhabitant" or as someone else who "generally [had] joint access or control for most purposes." Matlock, 415 U.S. at 171 n.7. Consequently, further inquiry was required. See King v. State, 79 So. 3d 236, 239 (Fla. 1st DCA 2012) ("If the basis for the asserted authority is not clear, the officer must conduct further

---

[3]The detectives' testimony was equivocal as to the timing of Rodda's statement that he had been asleep, and the trial court made no specific finding.

inquiry before relying on the third party's representations."); United States v. Cos, 498 F.3d 1115, 1128 (10th Cir. 2007) ("[T]he government cannot meet its burden of demonstrating a third party's apparent authority 'if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry.' " (quoting United States v. Kimoana, 383 F.3d 1215, 1222 (10th Cir. 2004))); 4 Wayne R. LaFave, Search & Seizure § 8.3(g), at 239 (5th ed. 2012) ("[U]nder a sound application of the apparent authority rule the police must be required to make reasonable inquiries when they find themselves in ambiguous circumstances.").

But neither detective even asked Rodda if he lived there. Nothing precluded them from doing so: neither testified as to any exigency, and both testified that Rodda was calm and cooperative. And yet they failed to inquire further into his connection to Walker and to the residence. Instead, based on limited and inconclusive information, they simply accepted his invitation to enter Walker's residence. This is not the type of situation in which apparent authority justified the entry and precludes suppression. See, e.g., State v. Terzian, 162 A.3d 1230, 1240 (R.I. 2017) (holding that officers improperly relied on their assumption that the defendant's girlfriend had the authority to consent to their entry of his residence; although she was inside the residence along with her daughter and a young child and identified herself to the officers as the defendant's fiancée, the officers "made no inquiry to satisfy themselves that she actually lived there"); Cos, 498 F.3d at 1118, 1130-31 (holding that officers' reliance on defendant's friend's consent to their entry of the defendant's residence was unreasonable although she answered the door, confirmed that she and her children were "the only ones at home," and told officers that the defendant had not been there

- 6 -

since earlier that day; the officers "did not know who she was or what relationship she had to [the defendant] or to the residence"); cf. Kohn v. State, 69 So. 3d 388, 390 (Fla. 1st DCA 2011) (holding that the trial court did not err in determining that officers had reasonably believed that the victim had had the authority to consent to their entry of the defendant's apartment when the victim had told the officers that she was living with the defendant in his apartment, that she had the key to the apartment, and that she had been added to the lease but that she had fled the apartment and had left all of her belongings there after the defendant raped her).

The trial court, therefore, erred in denying Walker's motion to suppress evidence. Accordingly, we reverse and, because the motion was dispositive, remand with instructions that Walker be discharged.

Reversed; remanded with instructions.

LaROSE, C.J., and SILBERMAN, J., Concur.