FILED
**United States Court of Appeals
Tenth Circuit**

**December 17, 2021**

**Christopher M. Wolpert
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

RODOLFO RODRIGUEZ, JR.,

   Defendant-Appellant.

No. 20-2173
(D.C. No. 1:18-CR-01568-WJ-KBM-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **BALDOCK** and **BRISCOE**, Circuit Judges.

Defendant appeals the district court's order denying his motion to suppress evidence. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

The historical facts of this case center on an encounter between Defendant and Special Agent Jarrell Perry of the DEA. On February 1, 2018, Defendant travelled on an Amtrak train that arrived in Albuquerque for a scheduled stop after departing Los Angeles. Agent Perry, who specializes in consent searches on trains and buses carried

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

out in plain clothes, boarded the train when it arrived in Albuquerque. On this occasion, Agent Perry wore plain clothes, carried a concealed firearm, and an audio recorder which recorded his interaction with Defendant. Agent Perry found Defendant seated in a window seat at the front of the train car in a sprawled-out position with at least one bag, a backpack, in the aisle seat next to him. The parties dispute whether there was another bag on the seat next to Defendant when Agent Perry made contact with him. According to Agent Perry, there was a backpack in the seat and a plastic bag was inside it. Defendant claims that the plastic bag was underneath the backpack on the seat next to him. Nonetheless, Agent Perry approached Defendant, identified himself as a police officer, and asked Defendant if he could speak with him. According to Agent Perry, Defendant responded by simply handing him his ticket. Defendant, on the other hand, contends that he replied "no, I'm asleep, here's my ticket" and then handed his ticket to Agent Perry. Agent Perry examined Defendant's ticket and asked for identification, which Defendant provided. Agent Perry proceeded to ask Defendant if he had any luggage with him on the train. Defendant initially responded by shaking his head, a gesture Agent Perry confirmed was an answer in the negative. Undeterred, Agent Perry inquired about the backpack on the seat next to Defendant. At first Defendant denied owning the backpack, but confirmed it belonged to him after further questioning. Defendant, however, contends that Agent Perry's inquiry was directed at a bag in the rack above his seat, which is why he initially denied ownership. Nevertheless, Agent Perry asked Defendant for permission to search the backpack and Defendant responded by

2

emptying its contents. At this point, the accounts diverge again. Agent Perry testified that a plastic bag marked "laundry" fell out of the backpack when Defendant upended it. Defendant, however, claims he emptied his backpack before the train arrived in Albuquerque and that the plastic bag was underneath the empty backpack. Regardless, Agent Perry proceeded to ask Defendant for permission to search "this bag here" and Defendant replied, "go for it." Agent Perry then searched the plastic bag where he found several vials, one of which contained a gummy bear and another of which contained a "green leafy substance" that Agent Perry believed was marijuana. Defendant opened one of the vials and ate the gummy bear. At that point, Agent Perry ordered Defendant to stand for a pat-down. Defendant refused at first, but ultimately complied. With his partner at hand to assist, Agent Perry performed the pat-down and felt a bulge, which he thought was a pouch of drugs. Agent Perry arrested Defendant and escorted him to a private area to search him. The search revealed a bundle of cash hidden in Defendant's underwear and a second bundle taped to Defendant's leg. Agent Perry field tested the second bundle and determined it contained heroin. In total, Agent Perry found 1.10 kilos of heroin and $2,300 of cash in Defendant's possession. Based on this evidence, a grand jury indicted Defendant with possession of one kilogram or more of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).

Defendant filed a motion to suppress the evidence found by Agent Perry and a motion to dismiss the indictment. Defendant raised two arguments before the district court that are relevant to this appeal. First, Defendant argued his initial encounter with

Agent Perry was not consensual and therefore violated the Fourth Amendment. Second, Defendant asserted he did not consent to the search of the plastic bag and this search contravened the Fourth Amendment. After a hearing, the district court rejected Defendant's arguments and denied both motions. Defendant subsequently entered a conditional guilty plea, which enabled him to appeal the district court's denial of his motion to suppress and related motion to dismiss the indictment. This appeal followed.

## II.

We review a district court's denial of a motion to suppress by "consider[ing] the totality of the circumstances and view[ing] the evidence in a light most favorable to the government." *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004) (citing *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999)); *United States. v. Snyder*, 793 F.3d 1241, 1243 (10th Cir. 2015). In so doing, we "accept the district court's factual findings unless those findings are clearly erroneous." *Kimoana*, 383 F.3d at 1220 (citing *Long*, 176 F.3d at 1307). Determinations of witness credibility and the weight afforded to evidence are "the province of the district court." *Id.* (citing *Long*, 176 F.3d at 1307). "The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo." *United States v. Madden*, 682 F.3d 920, 924–25 (10th Cir. 2012) (citing *Kimoana*, 383 F.3d at 1220).

## III.

On appeal, Defendant presents three arguments. First, Defendant alleges the district court erred in finding that he consented to the encounter with Agent Perry.

Second, Defendant argues that the district court erred in finding that he consented to Agent Perry's search of the plastic bag. Finally, Defendant asserts the district court erred in finding Agent Perry's testimony credible. We consider each argument in turn.

We have previously recognized three types of interactions between police officers and individual citizens:

> (1) [C]onsensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

*United States v. Hammond*, 890 F.3d 901, 904 (10th Cir. 2018) (cleaned up) (quoting *United States v. Davis*, 94 F.3d 1465, 1467–68 (10th Cir. 1996)). "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer. If the individual is free to leave at any time during the encounter, he or she is not seized under the Fourth Amendment." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). Thus, the question of consent fundamentally turns on "whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). We consider several factors in making this determination:

> [T]he location of the encounter, particularly whether the defendant is in an open public place where he [is] within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether

5

their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Zapata*, 997 F.2d 751, 756–57 (10th Cir. 1993) (cleaned up and citations omitted).  These factors guide our analysis but are not individually dispositive.  *See United States v. Rogers*, 556 F.3d 1130, 1138 (10th Cir. 2009) (citing *United States v. Thompson*, 546 F.3d 1223, 1226 (10th Cir. 2008)).

Defendant first contends that the district court erred in finding his encounter with Agent Perry consensual.  As a threshold matter, Defendant argues the district court failed to "consider the special circumstances indicating that [Defendant] was not in an open public place."  According to Defendant, the fact that he "was in an area of the train absent from other passengers" meant "he was effectively isolated, and the interaction was more private than public."  Defendant believes this information, and the district court's apparent failure to expressly consider it in its analysis, counsels in favor of finding that the encounter with Agent Perry was not consensual.  We reject this contention.

As we have previously recognized, "[w]e can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court."  *United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013) (quoting *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012)).  The record shows Defendant was on a public train car and that, although he was seated by himself at the front of the car, there were other passengers seated in the rear.  Existing case law from our circuit leads us to

conclude that these facts are insufficient to defeat the district court's finding of consent. In *United States v. Little*, we addressed the question of what, if any, expectation of privacy an Amtrak passenger had in a roomette, and whether it impacted the analysis of consent. *See* 18 F.3d 1499, 1504–05 (10th Cir. 1994) (en banc). In answering those questions, we rejected the idea that a train roomette was analogous to a hotel room and went on to state "[w]hile a person's higher expectation of privacy in his or her train compartment would have some relevance if we were reviewing a search of the compartment, it has limited relevance to the question of whether a reasonable person would believe that he or she is unable to terminate the encounter." *Id.* at 1505 (cleaned up) (quoting *United States v. Bloom*, 975 F.2d 1447, 1453 n.6 (10th Cir. 1992)). Thus, we expressly dismissed the notion that the location of an encounter compelled a finding that it was non-consensual and "constituted an unlawful seizure." *Id.* at 1501. *Little*, therefore, forecloses Defendant's argument.

Defendant next claims his statement "no, I'm asleep" in response to Agent Perry's attempt to speak with him was sufficient to terminate the encounter and render it nonconsensual. The district court did not credit this argument. Rather, it reasoned that Agent Perry had not heard Defendant's statement and was free to continue the interaction.[1] *See United States v. Rodriguez*, 472 F. Supp. 3d 1098, 1107 (D.N.M. 2020).

---

[1] Defendant argues that the district court applied the wrong legal standard in reaching this conclusion. Because the district court's subsequent analysis is correct and because we

Continued . . .

The district court went on to conclude that, even if Agent Perry was aware of Defendant's statements, the encounter was still consensual. *See id.* at 1107–09. In reaching that conclusion, the district court cited appropriate authority from our circuit—*United States v. Guerrero*, 472 F.3d 784 (10th Cir. 2007) and *United States v. Manuel*, 992 F.2d 272 (10th Cir. 1993)—in support. *See Rodriguez*, 472 F. Supp. 3d at 1107–09.

We find ample support in the record and our case law to conclude Defendant's encounter with Agent Perry was consensual. First, Defendant did not state "no, I'm asleep" to Agent Perry in a vacuum. Rather, Defendant also, and almost simultaneously, said "here's my ticket" and handed his ticket to Agent Perry. Agent Perry then requested, rather than demanded, that Defendant produce his identification. We have previously established that there is no requirement for verbal consent and that "[c]onsent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer." *Guerrero*, 472 F.3d at 789–90 (citing *United States v. Benitez*, 899 F.2d 995, 998–99 (10th Cir. 1990)). These facts fall squarely within that principle. Evaluating the other relevant *Zapata* factors, we note that Agent Perry did not restrain Defendant until he had established probable cause for a pat-down and that he wore plain clothes and concealed his firearm. Additionally, Agent Perry's tone and demeanor were non-confrontational and he only retained possession of Defendant's ticket and identification for a brief period of time. While Agent Perry did

---

are free to affirm on any grounds supported in the record, we need not resolve this question here. *See Mabry*, 728 F.3d at 1166.

not specifically advise Defendant of his right to terminate the encounter, we have not recognized any obligation to do so. *See, e.g.*, *United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006) ("[A]n officer's failure to inform the defendant that she is free to leave, standing alone, does not make an encounter nonconsensual." (citation omitted)). Viewing this evidence in the "totality of the circumstances and . . . in a light most favorable to the government," we conclude Defendant consented to the encounter with Agent Perry. *See Kimoana*, 383 F.3d at 1220 (citing *Long*, 176 F.3d at 1307).

As for Defendant's second argument, he asserts the district court erred when it concluded Agent Perry's search of the plastic bag was consensual. There are two relevant search requests here. First, Agent Perry requested permission to search Defendant's backpack. Second, Agent Perry sought permission to search the plastic bag marked "laundry." Defendant challenges the district court's findings as to the second search. At bottom, Defendant contends that he did not consent to the search of the plastic bag and that both Agent Perry's request and his grant of consent were directed at the backpack.[2]

The district court found that Agent Perry's search request referred to the plastic bag, rather than the backpack as Defendant has suggested. In reaching that conclusion, the district court relied on the audio recording of the encounter as well as the transcript of

---

[2] This is our understanding of Defendant's argument. Defendant devotes most his discussion of this issue explaining why, in his view, the district court erred when it found Agent Perry's testimony credible. Credibility is a distinct issue from consent, and we consider them separately.

that recording. *See Rodriguez*, 472 F. Supp. 3d at 1110–13. Specifically, the district court noted the following relevant facts from the recording. First, Agent Perry had already confirmed the backpack belonged to Defendant before his initial request for permission to search. *Id.* at 1112. Second, there were jostling sounds on the recording after Agent Perry's first search request, indicating that Defendant upended his backpack in response to Agent Perry's request. *Id.* Third, the district court emphasized there was "a distinct inflection on the word 'this' in Perry's request for consent to 'search *this* bag here.'" *Id.* (emphasis in original). The district court found this inflection indicated Agent Perry's second request referred to a different bag than the backpack, namely the plastic bag. *Id.* We accept the district court's factual findings unless they were "clearly erroneous." *Kimoana*, 383 F.3d at 1220 (citing *Long*, 176 F.3d at 1307). After independently reviewing the recording in question, we agree with the district court's assessment and conclude its findings were not "clearly erroneous." *See id.*

Finally, Defendant argues the district court erred in finding Agent Perry's testimony credible. Defendant points to apparent inconsistencies in Agent Perry's testimony as well as decisions from various courts in this Circuit, including our own, that either found Agent Perry was not credible or otherwise questioned his conduct. We have repeatedly explained, however, that we owe the district court significant deference when reviewing its credibility determinations and its evaluation of witnesses. *See, e.g.*, *id.* at 1220 ("The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court."

(citation omitted)); *id.* at 1226 ("We give special deference to such credibility determinations, which can virtually never be clear error." (quoting *United States v. Pedroza*, 269 F.3d 821, 826 (7th Cir. 2001)); *United States v. McIntyre*, 997 F.2d 687, 708 (10th Cir. 1993) ("We are bound to accept the resolution of conflicting evidence and the assessment of the credibility of witnesses as they are found by the trial judge as the trier of fact." (citing *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993)). Here, the district court observed Agent Perry's testimony and found him to be a credible witness. *See Rodriguez*, 472 F. Supp. 3d at 1106–07, 1111–12. Viewing the district court's determinations in light of the deference we owe, we have no difficulty concluding that the district court did not err in finding Agent Perry's testimony credible.

IV.

For the foregoing reasons, we AFFIRM the district court's judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge

11